UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| __Michael V. Pellicano__ <br> (Enter above the full name of plaintiff in this action) | CIVIL CASE NO: __11-406__ <br> (to be supplied by Clerk of the District Court) |

v.

__Blue Cross Blue Shield Association;__
__PA Blue Cross Blue Shield;__
__CareFirst Blue Cross Blue Shield Maryland;__
__The Office of Personnel Management__
(Enter above the full name of the defendant(s) in this action)

**FILED**
**SCRANTON**

MAR 0 2 2011

Per_____
DEPUTY CLERK

COMPLAINT

1. The plaintiff _____Michael V. Pellicano_____ a citizen of the County of _____Lackawanna_____ State of Pennsylvania, residing at _209 E. Line St., Olyphant, PA 18447_ wishes to file a complaint under _____
(give Title No. etc.)

_____

2. The defendants are:
Blue Cross Blue Shield Association, 1310 G St NW #8, Washington D.C., 20005-3001; CareFirst Blue Cross Blue Shield Maryland, 10455 Mill Run Circle, Owings Mills, MD  21117; Blue Cross Blue Shield Pennsylvania, 1800 Center St., Camp Hill, PA 17089; and The Office of Personnel Management Insurance Operations, 1900 E. Street, NW, Washington D.C., 20415

3. STATEMENT OF CLAIM: (State below the facts of your case. If you have paper exhibits that give further information of your case, attach them to this completed form. Use as much space as you need. Attach extra sheet(s) if necessary).

I Michael Vincent Pellicano hereby file a civil complaint against, Blue Cross Blue Shield Association, 1310 G St NW #8, Washington D.C., 20005-3001, CareFirst Blue Cross Blue Shield Maryland, 10455 Mill Run Circle, Owings Mills, MD  21117, Blue Cross Blue Shield Pennsylvania, 1800 Center St., Camp Hill, PA 17089, and The Office of Personnel Management Insurance Operations, 1900 E. Street, NW, Washington D.C., 20415, for egregious bad faith, fraud, negligence, and arbitrary and capricious actions. These actions are a breach of their fiduciary duties. I seek compensation for emotional distress, punitive damages, and reimbursement for any expenses incurred by me in pursuit of this action.

From November 2007 through 2010 I was provided false, misleading, incorrect, and contradictory information with egregious intent to deny approval of coverage for durable medical equipment (DME). In addition my Congressman was provided false information in response to his inquiries on my behalf. I present the following documented timeline with enclosures as evidence.

In **November 2007**, I contacted Blue Shield PA customer service (Joe Bumgarner) for information on obtaining prior authorization/pre-service review of coverage for durable medical equipment, the RT 300 FES, (functional electrical stimulation), cycle. I was told I would need to get a letter of denial of coverage from Medicare, my primary insurance, before receiving a pre-service review from Federal Blue Cross Blue Shield PA.

In **January 2008** after waiting over a month for a letter of denial from Medicare, I contacted Blue Shield PA customer service rep (Joseph Bumgarner) a second time and was told I **would not** need the Medicare letter of denial. I would need to send an invoice from the provider, Restorative Therapies Inc., Maryland, along with a letter of medical necessity from my doctor to obtain a pre-service review. I promptly sent both items as required.

On **3-4-08** I received a letter of denial **(enclosure1)** for coverage for this durable medical equipment (reason: not medically necessary and appropriate). As stated in the letter of denial, I could have my doctor contact the medical director who made the denial determination for a peer-to-peer review. My doctor called and left messages at the number given and was never contacted. Also as instructed in the letter of denial, I had the right of an appeal and the right to be supplied with any documentation, criteria, policies, and reference material etc. used in making this decision. Upon request, I was sent a copy of Highmark Medical Policy E-40 **(enclosure 2)** on **3-28-08**. I requested copies of documents referenced on page three of Policy E-40. After many phone calls to customer service representatives and supervisors, I was told by Shannon Carpenter, a pre-service review supervisor, that they would be unable to supply the requested materials except for the HPCS code E0764 which she faxed on **4-25-08**.

While I was preparing my appeal, minus the additional reference material requested, I was contacted on **5-9-08** by Rose Beckett, Supervisor, Federal Employee Program Blue Shield PA, and told that my case was being re-reviewed. After failed attempts to contact Ms. Beckett on the status of the re-review, I was finally contacted by Mandy Myers, also a supervisor of the Federal Employee Program Blue Shield PA. She informed me that her manager Stacy Cale was re-reviewing my case. I explained that I was ready to mail my appeal to the address given in the letter of denial. I offered and faxed a copy of that appeal to Mandy Myers on **5-18-08**. On **5-21-08** Mandy Myers contacted me, as per her manager Stacy Cale and said she was sending me a letter _**(after seven months)**_ apologizing: I was given incorrect information. Miss Myers stated that because the equipment manufacturer/provider was based in Maryland, I should have been instructed to go through the CareFirst Maryland Federal Blue Cross Blue Shield, **which did not do pre-service reviews** (I would later learn that the DME in question had been approved through Blue Cross Blue Shield plans in other states including Pennsylvania, and that pre-service review for FEP members had been in place since February 2008). Miss Myers also stated as per Ms. Cale that because the equipment was **experimental**, it would not be covered anyway. I explained to

Miss Myers that if anyone had actually reviewed the documentation provided, they would have known that the equipment was in fact FDA approved, not experimental. After checking, she said, "I see where it is FDA approved, I will point that out to my manager and call you back." I contacted Miss Myers on **5-30-08**, and she said that her manager contacted Guyling Lucas, a director at the Federal Employee's Program. Miss Myers told me that Mr. Lucas attempted to get CareFirst BC BS Maryland to do a pre-service review, and was told they would not. Again as I would find out, pre-service review had been in effect since February 2008. Received letter of apology by fax on **5-30-08 (enclosure 3)**.

**6/5/08**: contacted Bonita Wilson OPM insurance complaint department, asked for assistance

**6/10/08**: as per Ms. Wilson, CareFirst BC BS Maryland would contact RTI and do a pre-service review.

**6/18/08**: contacted Ms. Wilson, explained that CareFirst BC BS Maryland had still not contacted RTI. Same day, Ms. Wilson explained, RTI received a call from PA BS on 6-17-08 instructing RTI to contact CareFirst.

**6/19/08**: RTI received a call from PA BS instructing them to send a claim to CareFirst BS. The same day, Ms. Fields of RTI explained to me that in her dealings with CareFirst BS they would not do a pre-service review. I would need OPM to direct CareFirst BS to do a pre-service review. Same day I informed Ms. Wilson of my conversation with Ms. Fields RTI. As per Ms. Wilson, same day, there was an error and that CareFirst would be contacting RTI directly.

**6/20/08**: Ms. Fields of RTI was contacted by Valerie Fowler FEP provider services supervisor on 6/19/08 by fax **(enclosure 4.)** RTI was faxed a preauthorization/pre-service review request form for DME coverage from Care First B.C. BS Maryland. As stated in the fax, **as of February 2008 preauthorization/pre-service review for DME was available for all Federal Blue Cross Blue Shield members.**

**6-24-08**: Ms. Fields of RTI sent a claim packet for preauthorization/pre-service review to CareFirst Federal BCBS Maryland. After all this time and hard work trying to get a pre-authorization/ pre-service review for this durable medical equipment, had to start from scratch with CareFirst Maryland Blue Cross Blue Shield!

**7/28/08** Contacted Bonita Wilson, OPM, Cathy Wechsler of Congressman Kanjorski's office, and Jan Swigert, Manager DME CareFirst Maryland on status of pre-service review request. Per Jan Swigert via phone call, pre-service review resulted in denial because medical director Linton Ray (spelling?) deemed the equipment **"not medically necessary."** Per Jan Swigert, provider RTI received verbal notification on **July 11**. She said she would try to find Letter of Denial, perhaps in CareFirst compliance department in Baltimore. She will submit copy to OPM Bonita Wilson and call or e-mail information to me.

**7-29-08** Per Jan Swigert, phone call: Letter of Denial is with Mary Freeman (spelling?) at Office of Compliance, Baltimore MD, for editing. Then, it will be sent to legal department for review.

**7-30-08** Bonita Wilson OPM and Jan Swigert CareFirst provided contact number for Vanessa Coleman, FEP CareFirst Member Customer Service.

**7- 31-08** Vanessa Coleman also stated CareFirst Maryland BC/ BS had notified RTI on **7-11-08** that they would not provide coverage for the requested DME.

**8-5-08** Per Rose Fields, RTI received neither verbal nor written notification of adverse decision. Ms. fields received fax **(enclosure 5 )** on 7-8-08 from K Elzy that did not mention denial and phone call from a nurse at Delmarva Health Plan stating that she received packet and would be forwarding it to medical director for a decision, "most likely" a denial, because DME **"experimental."** Ms. Fields said she would e-mail me her notes **(Enclosure 6).**

**8-5-08** Vanessa Coleman again stated that the provider was notified verbally 7-11-08 of the adverse decision. I explained that Rose Fields told me this morning that she received no such information. Miss Coleman stated that the provider would receive letter of denial, not the member, as Miss Fields was told. Ms. Coleman also stated that she did not know why Rose Fields was contacted by Delmarva Health Plan. She had no knowledge of Delmarva or any connection with CareFirst BC BS. After looking into it, she stated that Delmarva handles Medical Assistance claims for Maryland and has no connection with CareFirst BC. She also stated there is no appeal for a pre-service/ pre-authorization review.

**8-6-08** Per phone call with Jan Swigert: her supervisor Kathy Elzy RN (spelling?) documented that she notified RTI on 7-11-08 by phone of the adverse decision on pre-service review. Ms. Swigert further explained that <u>several</u> <u>letters</u> of denial were sent to Mary Freeman at the CareFirst office of compliance in Baltimore for editing, but as of this date (8-06-08), Ms. Freeman was not satisfied with any of the verbiage, and so, neither RTI nor I have received written notification. I told Ms. Swigert that I had contacted Rose Fields, RTI, who told me that, as of yet, she had received no verbal nor written denial. Ms. Fields did receive a fax on 7-8-08 and phone call on 7-11-08, **(refer to enclosure 6)** but neither was a denial. The 7-8-08 fax she received from K Elzy (name is not legible) stated, "DME requests for federal employees do not require pre-CERT except for home hospice". No phone number was given, only a voicemail: 800-334-3427 and fax: 410-720-3122. Ms. Fields replied via fax to K. Elzy (?) stating that as per OPM, DME pre-service review process has been in effect since February 2008 etc. The 7-11-08 phone call came from a nurse at Delmarva Health Plan (1-410-822-7223). Ms. Fields explained to me that this is the branch of BC MD that typically does pre-authorization for straight medical assistance members (which I am not). The nurse at Delmarva stated that the Pad package (claim packet) was forwarded to her. She also stated that the medical director would be issuing a decision shortly, "most likely" a denial for *Experimental*, and that it would "most likely" be mailed to the *member*. I told Ms Swigert that Vanessa Coleman, FEP Customer Service, had told me that she knew nothing of Delmarva Health Plan and any connection of it with BC Maryland. Ms. Swigert requested phone number for Rose Fields RTI which I provided.

**8-7-08** Per Rose Fields via a copy of her notes of her 8/6/08 **(enclosure 7)** phone call with Jan Swigert that she e-mailed to me: when asked about the pt's(patients) appeal options, Jan Swigert stated that there was nothing set up for FEP members to appeal a pre-service review denial internally. The pt's next stop would be to address the denial with OPM. However, she could provide no definitive info on who or what dept the patient should contact at OPM to appeal this denial.

**8-9-08** I sent faxes to V. Coleman, A. Berson, J. Swigert, and V. Fowler of CareFirst and B. Wilson at OPM requesting letter of determination and guidelines for DME pre-authorization/pre-service review including time requirements for response to member and provider. I received no response.

**8-20-08** Robert Robison, OPM Contract Specialist, emailed me the following: ... should the provider wish to challenge the decision regarding the answer provided during the Pre-Service Review process, Local Plans will follow their internal appeal process.

**8-22-08** I received e-mail from RTI with a copy of letter of denial dated 8/13/08 **(enclosure 8)** from Jan Swigert BC/BS. The denial was based on the director's determination that the DME is **"maintenance equipment."** As per Rose Fields RTI in her e-mail: "As this is a denial on a pre-service review, FBC takes the stand that there are no appeal rights for a pre-service review. Even though the pre-service review is a policy that they have instituted, they state that the pre-service review is more of a courtesy to their members - and not actually a policy. Leave it to FBC to come up with an answer for all of their non-consistent policies."

**8-27-08** Per e-mail from R. Robison, "There is an internal document used by BCBS to explain its PreService Review Program, **however**, BCBS has deemed this document to be proprietary information and therefore unreleasable. Your Congressman has been in touch with this office concerning all the issues you have raised and a response is in the process of being prepared by one of our department's health benefits examiners."

The Office of Personnel Management, The Blue Cross Blue Shield Association, Federal Blue Cross Blue Shield PA and Maryland have provided false information to Congressman Kanjorski 's office in their responses to two inquiries by his office on my behalf regarding this issue. The first **(enclosure 9)** FEP BCBS PA response by Preston Dabbs Appeals Specialist. I submit my response to FEP BC BS PA dated October 20 2008, my letter to Congressman Kanjorski requesting assistance dated July 7, 2008 and PA BCBS appeal **(enclosures 10, 11, 12)** to document the numerous incorrect and false statements in Mr. Dabbs's letter. The second, OPM response **(enclosure 13)** by Jean Kinevich Health Benefits Contract Specialist to Congressman Kanjorski's inquiry. The first false item is in paragraph 2, "Highmark incorrectly indicated Mr. Pellicano could file an appeal to the **U.S. Office of Personnel Management** per the disputed claims process in the BCBS Service Benefit Plan brochure." Highmark Blue Shield of PA was where I was instructed to file my appeal, not the office of personnel management, **(refer to enclosure 12).** The second false statement, paragraph 3, is that the provider was notified by phone on July 11, 2008 of denial of coverage by CareFirst, **(refer to enclosure 6).** The third false statement is in paragraph 4, where it states that CareFirst would issue a letter of addendum to provider on how they could challenge the denial. As per, **(enclosure 14),** RTI received no letter of addendum.

The preceding documentation clearly shows that these parties acted in egregious bad faith, committed fraud, were negligent, arbitrary and capricious in their blatant efforts to deny coverage of the DME in question during the prior authorization/pre-service review process. Note the reasons for denial of coverage, "exercise equipment", "experimental", "maintenance equipment", even though the documentation provided proves otherwise, including the fact that Blue Cross Blue Shield has provided coverage of the DME in question to other members.

Further proof of these egregious bad faith actions is evidenced in the following. After being denied coverage through prior authorization/pre-service review, I purchased the DME in question and

filed a claim with the same information provided for prior authorization/pre-service review. Coverage was initially denied with yet a different explanation, **(refer to enclosures 15, 16),**" Benefits are not provided for services/supplies listed in the general exclusions section of the plan brochure". I had the right to appeal this decision, but only because I purchased the DME. After filing this appeal, **(enclosure 17),** with exhausting detail to address the large number of inconsistencies with Blue Cross Blue Shield, I finally received an approval of coverage decision. This approval in itself 9/23/09, **(enclosure 18),** confirms the prior egregious bad faith intent.

The bad faith arbitrary and capricious actions continued even with this approval, because coverage was 65% of the billed amount, even though the plan allowance/UCR (usual customary and reasonable) for other members in 2008 was 100% of the billed amount for the same durable medical equipment in question. An appeal to OPM with regard to this issue resulted in more inconsistencies. Ms. Isaac, (Insurance Benefits Claim Examiner for The Office of Personnel Management), stated in April 23, 2010 decision letter **(enclosure 19),** "The Plan's brochure is the official statement of benefits for the BC BS Service Benefit Plan. The Plan is required to administer benefits according to the definitions, limitations, and exclusions set forth in the plan brochure. As stated in paragraph 2 of the decision letter as well as page 119 of the 2008 plan brochure **(enclosure 20), "for physicians and other healthcare professional that do not contract with your local BC BS, our <u>allowance</u> is equal to or <u>greater</u> of 1 (the Medicare participating fee schedule amount for that service or supply in the geographical area in which it was performed or obtained (or 60% of the billed charge if there is no equivalent Medicare fee schedule amount) or 2 (100% of the 2008 <u>Usual, Customary and Reasonable</u> (UCR) amount for the service or supply in the geographic area in which it was performed or obtained."** Ms. Isaac states in the same paragraph, **"However, CareFirst BC BS policy is to provide benefit at 65% of the billed amount when there is no established allowance."** Per Ms. Dean's, Federal CareFirst Blue Cross Blue Shield Maryland Reconsideration Specialist, decision letter September 23, 2009 **(enclosure 18)** CareFirst was **advised by medical review** to pay benefits at 65%, there was no **policy** referenced.  When questioned as to how 65% was arrived at, Ms. Dean stated she did not know and never mentioned any policy. Ms. Isaac provided further contradicting evidence in paragraph 3, **"You are requesting the plan to provide additional benefits because the plan brochure supports the use of 100% of the billed amount as the <u>Plan Allowance</u> and because the <u>UCR</u> for other BC BS FEP (Federal Employees Program) members have been 100% of the submitted charges for the DME equipment in question."** After making the previous statement, Ms. Isaac then states, in the same paragraph, **"There is not a <u>UCR</u> or Medicare fee schedule amount for the DME in question."** CareFirst BC BS breached their fiduciary duties, were arbitrary and capricious by providing benefits at 100% of the billed amount as the plan allowance/UCR for the DME in question for other members, then denying the same for my claim. OPM breached its fiduciary duties and was arbitrary and capricious in its decision as administrators of the FEHBP.

4. WHEREFORE, plaintiff prays that:  the court find in his favor and award compensation as well as punitive damages and reimburse any expenses incurred by him in pursuit of this action.

Enclosures

*(Signature of Plaintiff)*

**List of Enclosures**

1 RTI PA Blue Cross Blue Shield denial 3-3-08/2 pages

2 Highmark BCBS policy E40 3/28/08

3 faxed letter of apology Mandy Myers PA BCBS 5-30-08

4 CareFirst Maryland BC BS Valerie Fowler fax

5 Rose Fields RTI 7-8-08 faxes K. Elzy

6 Rose Fields notes 7-8-08

7 e-mail notes rose fields 8-7-08

8 CareFirst BC BS Maryland denial 8-13-08

9 FEP BC BS PA response to Kanjorski

10 my response to FEP BC BS PA letter to Kanjorski

11 letter to Kanjorski 7-7-08

12 PA BC BS appeal

13 OPM response Kanjorski

14 E-mail RTI  8-18-10 addendum letter

15 EOB 12/17/08

16 page 103 general exclusions 2008 BCBS plan brochure

17 CareFirst Maryland BCBS reconsideration request 3/6/09

18 CareFirst Maryland BC BS approval 9/23/09

19 OPM letter Isaac 4/23/10

20 page 119 2008 BCBS plan brochure

March 4, 2008

*ENCLOSURE 1*

*PAGE 1 OF 2*

RE:  ´ Patient: **MR. MICHAEL PELLICANO**
      Physician: **TO WHOM IT MAY CONCERN**
      Facility: **RESTORATIVE THERAPIES INC**
      Group ID: **105**
      Employer Group Name: **Federal Employee Program**
      Member/Subscriber ID: **R5874037500**
      Service Requested From: **03/03/2008**
      Service Requested To: **05/03/2008**
      Reference #: **4663600**

Dear **TO WHOM IT MAY CONCERN:**

A physician has reviewed the information provided to us.  Based on our review, we are denying your request for coverage of **Home Durable Medical Equipment Purchase** because we have determined that the services are not medically necessary and appropriate as defined in SECTION DE - DEFINITIONS of your health care contract/subscriber agreement.  SECTION EX - EXCLUSIONS of your contract specifically states that no benefits will be provided for services, supplies or charges which are not Medically Necessary and Appropriate as determined by the Plan.

Your contract defines "Medically Necessary and Appropriate" as follows:

- appropriate for the symptoms and diagnosis or treatment of the Subscriber/Member's condition, illness, disease or injury; and
- provided for the diagnosis or the direct care and treatment of the Subscriber/Member's condition, illness, disease or injury; and
- in accordance with current standards of good medical practices; and
- not primarily for the convenience of the Subscriber/Member or the Subscriber/Member's provider; and
- the most appropriate supply or level of service that can be safely provided to the Subscriber/Member.  When applied to hospitalization, this further means that the Subscriber/Member requires acute care as an Inpatient due to the nature of the services rendered or the Subscriber's/Member's condition, and the Subscriber/Member cannot receive safe or adequate care as an Outpatient.

The Plan reserves the right to determine, in its sole judgment, whether a Service is Medically Necessary and Appropriate.  No benefits hereunder will be provided unless the Plan determines that the Service or supply is Medically Necessary and Appropriate.

In determining whether the services were medically necessary and appropriate, we considered the facts and circumstances of your situation in light of our medical policy E-40.

Mr. Michael V. Pellicano
209 E Line St
Olyphant, PA 18447

The request for coverage of an FES cycle ergometry system is not approved in accord with medical policy E-40. Based on review of available information, the patient has tetraplegia as a result of a cervical spine injury. The goal of physical medicine must be to train SCI patients on the use of NMES/FES devices to achieve walking, not to reverse or retard muscle atrophy. Claims submitted for these devices for conditions other than paraplegia (344.1) will be denied as not medically necessary

Upon request, the following information will be provided to you, the physician or the member:

- A copy, free of charge, of any policy, criteria, guidelines, document, record or other information referenced in making this determination.

This determination has been made for coverage purposes; it cannot supersede the professional judgment of the treating physician. In all situations the physician must use his/her professional judgment to provide care he/she believes to be in the best interest of the patient. As always, the physician and member are responsible for treatment decisions. This notice is a payment notification only.

If you, as the physician, would like to discuss this case with a physician reviewer prior to initiating the formal appeal process, please call 1-866-634-6468. If you or the member wishes to request an appeal of this decision, please follow the steps outlined in the appeal rights descriptions attached to this letter.

If you have any questions regarding this determination please call:

>    Provider: **800-547-3627**

>    Member:  Call the Member Service Department at the telephone number on your identification card.

Sincerely,


Healthcare Management Services

A department of Highmark which performs utilization review services for members of Highmark Blue Shield and Keystone Health Plan West programs.

Attachments:   Provider Appeal Rights description
              Member Appeal Rights description
              Designation of an Authorized Representative Form

Cc: **MR. MICHAEL PELLICANO
RESTORATIVE THERAPIES INC**

Mr. Michael V. Pellicano
209 E Line St
Olyphant, PA 18447

ENCLOSURE
PAGE 1 OF 3.

Medical_Policy_Bulletin

# Highmark Medical Policy Bulletin

| | |
|---|---|
| **Section:** | Durable Medical Equipment |
| **Number:** | E-40 |
| **Topic:** | Neuromuscular Electrical Stimulation (NMES) Device Used by Spinal Cord Injured Patients for Walking |
| **Effective Date:** | November 13, 2006 |
| **Issued Date:** | September 10, 2007 |
| **Date Last Reviewed:** | |

## General Policy Guidelines

### Indications and Limitations of Coverage

Coverage of NMES/FES for walking will be limited to Spinal Cord Injured (SCI) patients. Spinal cord injury can be traumatic (e.g. resulting from trauma, such as a motor vehicle accident, violence, or a fall) or non-traumatic (e.g., resulting from a disease or disorder, such as a tumor or virus). In order for payment to be made, SCI patients must have all of the following characteristics:

1. persons with intact lower motor units (L1 and below) (both muscle and peripheral nerve);
2. persons with muscle and joint stability for weight bearing at upper and lower extremities that can demonstrate balance and control to maintain an upright support posture independently;
3. persons that demonstrate brisk muscle contraction to NMES and have sensory perception of electrical stimulation sufficient for muscle contraction
4. persons that possess high motivation, commitment and cognitive ability to use such devices for walking;
5. persons that can transfer independently and can demonstrate independent standing tolerance for at least 3 minutes;
6. persons that can demonstrate hand and finger function to manipulate controls;
7. persons with at least 6-month post recovery spinal cord injury and restorative surgery;
8. persons without hip and knee degenerative disease and no history of long bone fracture secondary to osteoporosis; and
9. persons who have demonstrated a willingness to use the device long-term.

Coverage for the use of NMES/FES is limited to patients with SCI for walking who have completed a training program, which consists of physical medicine sessions with the device over a period of three months. The trial period will enable the physician treating the patient for his or her spinal cord injury to properly evaluate the person's ability to use these devices frequently and for the long term. These physical medicine sessions are only covered in the following settings: inpatient hospital; outpatient hospital; comprehensive outpatient rehabilitation facilities; and outpatient rehabilitation facilities. The physical medicine necessary to perform this training must be directly performed by the physical therapist as part of a one-on-one training program; this service cannot be done unattended.

The goal of physical medicine must be to train SCI patients on the use of NMES/FES devices to achieve walking, not to reverse or retard muscle atrophy.

NMES/FES to enhance walking in SCI patients will not be covered with any of the following:

1. presence of cardiac pacemakers (V45.01, V45.89, V53.31) or cardiac defibrillators (V45.00, V45.02, V45.09);
2. severe scoliosis or severe osteoporosis (733.00-733.09, 736.89, 736.9, 737.30-737.39, 737.40, 737.43, 738.4, 738.5, 754.2);
3. irreversible contracture (736.00-736.09, 736.30-736.39, 736.9, 736.70-736.79, 738.81, 736.89);
4. autonomic dysreflexia (337.3); or
5. skin disease or cancer at area of stimulation.

MAR-28-2008 04:28 PM   5044540450

| |
|---|
| Mr. Michael V. Pellicano |
| 209 E Line St |
| Olyphant, PA 18447 |

2/4

Medical_Policy_Bulletin

Claims submitted for these devices for conditions other than paraplegia (344.1) or when any of the conditions listed in criteria 1 through 8 are reported will be denied as not medically necessary. A participating, preferred, or network provider cannot bill the member for the denied service.

Diagnosis code 344.1 must be present for payment to be made. However, while paraplegia of both lower limbs is a necessary condition for coverage, the nine criteria listed on this policy are also required

Coverage is subject to any applicable physical medicine and/or durable medical equipment (DME) limitation in the member's benefit contract.

### Description

Neuromuscular electrical stimulation (NMES) involves the use of a device that transmits an electrical impulse to the skin over selected muscle groups by way of electrodes. There are two broad categories of NMES. One type of device stimulates the muscle when the patient is in a resting state to treat muscle atrophy. The second type which is addressed on this policy, is used to enhance functional activity of neurologically impaired patients. The type of NMES that is used to enhance walking in spinal cord injury (SCI) patients is commonly referred to as functional electrical stimulation (FES). These devices are surface units that use electrical impulses to activate paralyzed or weak muscles in precise sequence.

**NOTE:**
> This policy is designed to address medical guidelines that are appropriate for the majority of individuals with a particular disease, illness, or condition. Each person's unique clinical circumstances may warrant individual consideration, based on review of applicable medical records.

### Procedure Codes

E0764

### Traditional (UCR/Fee Schedule) Guidelines

Refer to General Policy Guidelines

### FEP Guidelines

This medical policy may not apply to FEP. Medical policy is not an authorization, certification, explanation of benefits, or a contract. Benefits are determined by the Federal Employee Program.

### Comprehensive / Wraparound / PPO / Major Medical Guidelines

Refer to General Policy Guidelines

Any reference in this bulletin to non-billable services by a network provider may not be applicable to Major Medical.

### Managed Care (HMO/POS) Guidelines

Refer to General Policy Guidelines



Mr. Michael V. Pellicano
209 E Line St
Olyphant, PA 18447

Medical_Policy_Bulletin

## Publications

### PRN References

08/2003, Coverage outlined for neuromuscular electrical stimulation devices used for ambulation

## References

The American Occupational Therapy Association, Inc. www.aota.org

NCD for Neuromuscular Electrical Stimulation (NMES)(160.12)

Transmittal AB-02-156, CR 2314

Transmittal 55, CR4014

## View Previous Versions

[Version 006 of E-40]
[Version 005 of E-40]
[Version 004 of E-40]
[Version 003 of E-40]
[Version 002 of E-40]
[Version 001 of E-40]

### Table Attachment

### Text Attachment

### Procedure Code Attachment

?

### Glossary

---

Medical policies do not constitute medical advice, nor are they intended to govern the practice of medicine. They are intended to reflect Highmark's reimbursement and coverage guidelines. Coverage for services may vary for individual members, based on the terms of the benefit contract.

Highmark retains the right to review and update its medical policy guidelines at its sole discretion. These guidelines are the proprietary information of Highmark. Any sale, copying, or dissemination of the medical policies is prohibited; however, limited copying of medical policies is permitted for individual use.



Mr. Michael V. Pellicano
209 E Line St
Olyphant, PA 18447

# HIGHMARK.

## *Fax Cover Sheet*

To: Mr. Pellicano
Fax #: 570-382-1393
Phone #: 570-489-1057
Date: 5/30/08
RE:
No. of pages (including cover): 3

From: Mandy Myers
Fax #: 888-301-5746
Phone #: 717-302-7183
cc:

Comments:

P  **Mr. Michael V. Pellicano**
209 E Line St
Olyphant, PA 18447

### NOTICE OF CONFIDENTIALITY

This transmission is intended only for the use of the individual or entity to which it is addressed. It may contain information that is privileged or confidential. If the reader of this transmission is not the intended recipient, or the employee or agent responsible for delivering the transmission to the intended recipient, you are notified that any dissemination, distribution or copying of this transmission is strictly prohibited.



**BlueCross BlueShield**
Federal Employee Program
Camp Hill, PA. 17089

May 30, 2008

Mr. Michael V. Pellicano
209 E. Line Street
Olyphant, PA  18447-2026

Inquiry Number:  08136499237

Dear Mr. Pellicano:

This letter is in response to your recent inquiry concerning the
preservice review that was requested for your Durable Medical Equipment.

First, please me apologize for the incorrect information and confusion
surrounding this process. As stated above, you and your provider had
requested for the Plan to do a preservice review for Durable Medical
Equipment. This review was sent to a Professional Consultant and the
determination was made that the equipment would not be an eligible
benefit due to not meeting the medical necessity criteria. Please refer
to page 118 of your 2008 Service Benefit Plan handbook for a description
of this criteria.

Since this review was completed, you received notification and have
requested a second review along with a request for an appeal of the
determination. During the course of trying to honor this request, it was
found that the preservice review was done in error. This was an error due
to the fact that the provider for the equipment is a Maryland provider.
Therefore, when and if the services would be rendered, the Maryland Plan,
CareFirst Blue Cross Blue Shield (1-800-658-6756), would be the
processing Plan for the claim.

Mr. Pellicano, although there are specific services that require prior
approval, the preservice review option is not a requirment under the
Federal Employee Program. This is a service that is offered by some Plans
in the program as an extra convenience to our members. Please refer to
section 3, pages 14-16 of your 2008 handbook for a listing of those
services that require prior approval.

Unfortunately, at this time, your local Pennsylvania Plan can do no more
to help with the preservice of the equipment requested. We have spoken to
our Plan Program Director, Grayling Lucas, to try to attain assistance
from CareFirst Blue Cross Blue Sheild for a preservice review through
them. It has been found that CareFirst does not offer the preservice
review program. In order for CareFirst to make a benefit determination,
they require the services to be rendered and a claim would need to be
submitted by you or your provider. Please refer to page 104 of your
handbook for information on how to file a claim for covered services.



Mr. Michael V. Pellicano
209 E Line St
Olyphant, PA 18447

During the preservice review that the Pennsylvania Plan completed, you were given appeal rights incorrectly. This preservice review does not apply to your disputed claims process as outlined on page 107 of your handbook. Therefore, Office of Personnel Management appeal rights do not apply. However, if you wish to make contact with the Office of Personnel Management, you may do so by calling 1-888-767-6738.

Again, I apologize for the confusion and the inconvenience this process and our error has caused you. I also apologize that the determination could not have been more favorable for you.

If you have any questions or concerns, please do not hesitate to contact me directly at 717-302-7183.

Thank you for your patience.

Sincerely,

Amanda Myers
FEP Customer Service Supervisor



Mr. Michael V. Pellicano
209 E Line St
Olyphant, PA 18447

NOV-30-2008 11:51 AM   30442404020

**4**

*Enclosure*

*PAGE 1 of 3*

☒ CareFirst BlueCross BlueShield
10455 Mill Run Circle
Owings Mills, MD 21117

☐ CareFirst BlueCross BlueShield
550 12th St., SW
Washington, DC 20065

# Fax

**CareFirst.** **BlueCross BlueShield**

To: Ms. Fields
Restorative Therapies
Re: DME auth form for Michael Pellicano
Phone:
Fax: 410-878-2466
CC:

From: Valerie Fowler
FEP Provider Services Supervisor
Date: 6/19/08

Number of pages
including cover sheet: 2

Phone:  410-561-4006

Fax:

Remarks:   ☐Urgent   ☒For your review   ☐Reply   ☐Please comment

I emailed this form as well.  Please complete it and fax it back to the number listed on the form, 410-505-6776

Thanks

$\mathcal{P}$ **Mr. Michael V. Pellicano**
209 E Line St
Olyphant, PA 18447

4

# Fax

| To: | From: Ro Fields |
|---|---|
| Fax: 14105056776 | Date: Tue, 24 Jun 2008 15:50:02 -0400 |

Subject: Attn: FBC DME Pre-Auth....Michael Pellicano....I.D. #R58740375

Mrs R. Fields
Reimbursement Manager
Restorative Therapies, Inc.
www.restorative-therapies.com <http://www.restorative-therapies.com/>
907 S. Lakewood Avenue
Baltimore, MD.  21224

Phone: (800) 609-9166 x307
Fax:     (410) 878-2466

PRIVILEGED AND CONFIDENTIAL:  The information contained in this e-mail
message is intended only for the personal and confidential use of the
recipient(s) named above.  If the reader of this message is not the
intended recipient or an agent responsible for delivering it to the
intended recipient, you are hereby notified that you have received this
document in error and that any review, dissemination, distribution, or
copying of this message is strictly prohibited.  If you have received
this communication in error, please notify us immediately by e-mail, and
delete the original message. Thank you.

Per the Director of UPM, the service
review for federal employees (DME over
the cost of $5K) went into effect as of
February 2008. They are in the process
of creating a standard operating procedure
to be distributed throughout the BCBS plans.

POWERED BY //// vocalocity®

Mr. Michael V. Pellicano
209 Eline St
Olyphant, PA 18447

PAGE 3 of 3

# Fax

## CareFirst
## BlueCross BlueShield

**To:** *Valerie Fowler*

**From:** Annie Berson, RN, CPUR
UM Supervisor, HH/DME/ALTCARE

**Date:** 6-19-08

**Phone:**

**Fax:** 410-505-6625

**CC:**

**Number of pages**
**Including cover sheet:** 2
**Phone:** 800-334-3427 x 6432

**Fax:** 410-505-2965

---

**Remarks:** ☐Urgent   ☐For your review   ☐Reply   ☐Please comment

---

**This decision is based on real time information and is valid at the time of inquiry. It does not represent a guarantee of member eligibility, coverage or payment.**

**Benefits, <u>including limitations and/or exclusions</u>, can be obtained by calling the CareFirst Voice Response Unit (VRU) at 1-800-842-5975.**

---

*Thank you Valerie for your help!*

*Annie*

**Confidentiality Notice**
Unauthorized interception of this communication could be a violation of Federal and State Law. This communication and any files transmitted with it are confidential and may contain protected health information. This communication is solely for the use of the person or entity to which it was intended. If you are not the intended recipient, any use, distribution, printing or acting in reliance on the contents of this message is strictly prohibited. If you have received this message in error, please notify the sender and destroy any and all copies.
Thank you.

CareFirst BlueCross BlueShield is the shared business name of CareFirst of Maryland, Inc. and Group Hospitalization
and Medical Services, Inc. which are independent licensees of the Blue Cross and Blue Shield Association.
® Registered trademark of the Blue Cross and Blue Shield Association.
®' Registered trademark of CareFirst of Maryland, Inc.

Mr. Michael V. Pellicano
209 E Lane St
Olyphant, PA 18447

*********************
*** RX REPORT ***
*********************

ENCLOSURE 5
PAGE 1 of 5

RECEPTION OK

| | |
|---|---|
| TX/RX NO | 8133 |
| DESTINATION TEL # | 410 763 6340 |
| DESTINATION ID | |
| ST. TIME | 07/08 12:35 |
| TIME USE | 01'02 |
| PGS. | 3 |
| RESULT | OK |

Mr. Michael V. Pellicano
209 E Line St
Olyphant, PA 18447

**CareFirst BlueChoice**    **CareFirst BlueCross BlueShield**

# DME FAX

### AUTHORIZATION REQUEST FORM FOR DME/PROSTHETICS/ORTHOTICS

DATE OF REQUEST: June 24, 2008          DATE OF SERVICE: _____

PROVIDER/COMPANY: Restorative Therapies, Inc.

PROVIDER ADDRESS: 4075 S Lakewood Ave, Balto, MD 21224

PROVIDER ID#: Tax I.D. 20-1210361          PROVIDER FAX #: 410-878-2466
NPI: 1699868345

AGENCY CONTACT NAME: Ina L. Fields     PROVIDER PHONE #: 800-609-9166 x307

MEMBER NAME: Michael Pellicano

MEMBER ID#: R589 403975                          DOB: 12/14/1958
(WITH PREFIX IF AVAILABLE)

PRESCRIBING PHYSICIAN: Mylan Lun, M.D.        PHYSICIAN ID#: 1114915469

| REQUESTED EQUIPMENT/ITEMS | RENT/PURCHASE ("R" OR "P") | HCPC CODE(S) | QTY PER MONTH |
|---|---|---|---|
| RT300-SLSA FES Cycle | P | E1399 | N/A |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

PATIENT DIAGNOSIS & CODE: C4, Asia B 952.04

PREVIOUS CERTIFICATION #: _____

## PLEASE FAX COMPLETED FORM TO: 410-505-6776

PURCHASE ITEM(S) CERTIFICATION #: _____   VALID _____ TO _____

RENTAL ITEM(S) CERTIFICATION #: _____   VALID _____ TO _____

**Important Please Read**
1. Claims submitted for these benefits are subject to lifetime maximums, any applicable deductibles, or coinsurances or provisions as specified in the contract. Benefits will be subtracted from the patient's lifetime benefits. This approval is subject to the following conditions: a) the membership is in effect at the time the services are rendered; b) these specific benefits are available under the particular contract for which the patient is insured, and c) non-exhaustion of lifetime benefits. In order to assure that benefits are available under patient's contract, please contact the appropriate benefit and eligibility verification area.

2. Payment of the claim for the approved services does not mean that future services will automatically be paid. All future claims for services similar to the above services have to be evaluated in accordance with the existing criteria.

3. If you have any questions regarding the extent of this authorization, please call (800) 554-3437 ext. 6425. Calls will be responded to within one business day.

Fax completed form to (410)720-3122 or (410)720-3128. Please contact provider services to verify member's eligibility and benefits for the requested service.

CareFirst BlueCross BlueShield is the shared business name of CareFirst of Maryland, Inc. and Group Hospitalization and Medical Services, Inc. CareFirst BlueChoice BlueShield and CareFirst BlueChoice, Inc. are independent licensees of the Blue Cross and BlueShield Association. ® Registered trademark of the Blue Cross and Blue Shield Association. ®' Registered trademark of CareFirst of Maryland, Inc.

CUT0205-1N (7/00)

P  Mr. Michael V. Pellicano
209 E Lme St
Olyphant, PA 18447

*PROCESS FEE*
*PAGE 3 OF 5*

# Fax


**CareFirst**
**BlueCross BlueShield**

**To:** Ro Fields
**Attention:** @ Restorative Therapies

**From:** K. Elzy
**Date:** 7/8/08

**Phone:**

**Fax:**

**RE:** MP

**# pages including cover sheet:**

**Dept.Voice Mail:** 1-800-334-3427
**Home Care Extention:** 4402     **DME Extention:** 6426

**Fax #:** 410-720-3122

| Remarks: | ☐Urgent | ☐For your review | ☐Reply☐Please comment |

Your request for services has been received. Please see below for further instruction related to the processing of that request:

☑ DME/HC requests for Federal Employee Membership (FEP) do not require Precert except for Home Hospice. For Home Hospice contact FEP Case Management at 800-360-7654. FEP Provider Services can be reached in DC at 202-488-4900 and in MD at 800-854-5256.

☐ Member's coverage with CareFirst ended on _____.

☐ This newborn has not been added to the policy at this time. Please contact Provider Services to confirm that the newborn has been added to the policy prior to resubmission of this request.

☐ Request contains incomplete information, please complete the form in its entirety, including HCPC codes and diagnosis codes (ICD-9), and return via the fax number at the bottom of the form.

☐ We are unable to locate membership with the information provided, please resubmit after verifying membership # including alpha prefix.

☐ Member has no out-of-network option; refer to a par DME/HC vendor. For a list of par providers, please call 1-800-810-2583 (BLUE) or visit www.CareFirst.com/member & visitor/find a doctor/facilities

☐ Your request was forwarded to the member's Case Manager. Please call the Case Manager listed below for further assistance.
    Case Manager:___ Phone#:_____ Fax#:____

☐ Nursing services are included in the infusion company's contract. Please contact the infusion provider for reimbursement for your nursing services.

☐ Initial C-PAP and Bi-PAP request require submission of a sleep study. Please resubmit sleep study report with the DME request.

☐ Diabetic supplies such as Lancets and test strips must go through the members Pharmacy benefit. Call Provider Services @ 1800-842-5975 with any questions.

DME/HC request forms can be obtained from our website @ www.carefirst.com/providers/html/Forms

## Verify DME/HC benefits @ 800-842-5975

**Confidentiality Notice**
Unauthorized interception of this communication could be a violation of Federal and State Law. This communication and any files transmitted with it are confidential and may contain protected health information. This communication is solely for the use of the person or entity to which it was intended. If you are not the intended recipient, any use, distribution, printing or acting in reliance on the contents of this message is strictly prohibited. If you have received this message in error, please notify the sender and destroy any and all copies. Thank you.

CareFirst BlueCross BlueShield is the shared business name of CareFirst of Maryland, Inc. and Group Hospitalization and Medical Services, Inc. which are independent licensees of the Blue Cross and Blue Shield Association.
® Registered trademark of the Blue Cross and Blue Shield Association.
®' Registered trademark of CareFirst of Maryland, Inc.


**Mr. Michael V. Pellicano**
209 E Line St
Olyphant, PA 18447

# Fax

To:                                   From: Ro Fields

Fax: 1410505677G                      Date: Tue, 24 Jun 2008 15:50:02 -0400

Subject: Attn: FBC DME Pre-Auth....Michael Pellicano....I.D. #R58740375

Mrs R. Fields
Reimbursement Manager
Restorative Therapies, Inc.
www.restorative-therapies.com <http://www.restorative-therapies.com/>
907 S. Lakewood Avenue
Baltimore, MD.  21224

Phone: (800) 609-9166 x307
Fax:   (410) 878-2466

PRIVILEGED AND CONFIDENTIAL:  The information contained in this e-mail
message is intended only for the personal and confidential use of the
recipient(s) named above.  If the reader of this message is not the
intended recipient or an agent responsible for delivering it to the
intended recipient, you are hereby notified that you have received this
document in error and that any review, dissemination, distribution, or
copying of this message is strictly prohibited.  If you have received
this communication in error, please notify us immediately by e-mail, and
delete the original message. Thank you.

Per the Director of OPM, the Service
Review for federal Employees (DME over
the cost of $5K) went into effect as of
February 2008. They are in the process
of creating a standard operating procedure
to be distributed throughout the BCBSplans.

POWERED BY ////

**vocalocity**®

```
                    ********************
                  ***   TX REPORT   ***
                    ********************
```

*ENCLOSURE 5*
*PAGE 5 OF 5*

```
    TRANSMISSION OK

    TX/RX NO            2985
    DESTINATION TEL #   4105056776
    DESTINATION ID
    ST. TIME            07/08 13:05
    TIME USE            02'19
    PAGES SENT          3
    RESULT              OK
```

07/08/2008 TUE 13:48  FAX 410 763 6340                                    ⌀002/003

06/24/08 14:53                        14437035323                         Pg 001

# Fax

To:                              From: Ro Fields

Fax: 14105056776                 Date: Tue, 24 Jun 2008 15:50:02 -0400

Subject: Attn: FBC DME Pre-Auth....Michael Pellicano....I.D. #R58740375

Mrs R. Fields
Reimbursement Manager
Restorative Therapies, Inc.
www.restorative-therapies.com <http://www.restorative-therapies.com/>
907 S. Lakewood Avenue
Baltimore, MD. 21224

Phone: (800) 609-9166 x307
Fax:   (410) 878-2466

PRIVILEGED AND CONFIDENTIAL: The information contained in this e-mail
message is intended only for the personal and confidential use of the
recipient(s) named above. If the reader of this message is not the
intended recipient or an agent responsible for delivering it to the
intended recipient, you are hereby notified that you have received this
document in error and that any review, dissemination, distribution, or
copying of this message is strictly prohibited. If you have received
this communication in error, please notify us immediately by e-mail, and
delete the original message. Thank you.

Per the Director of OPM, Pre-Service
Review for Federal Employees (DME over
the cost of $5K) went into effect as of
February 2008. They are in the process
of creating a standard operating procedure
to be distributed throughout the BCBS plans.

*P*  Mr. Michael V. Pellicano
     209 E Line St
     Olyphant, PA 18447

Fax received by Rose Fields - RTI insurance - Yahoo! Mail    Page 1 of 2

Case 3:11-cv-00496-S-RBF   Document   Filed 03/03/11   Page 25 of 57    6

ENCLOSURE #6
Verizon Y!   PAGE 1 of 1

Hi, Michael    Sign Out   All-New Mail   Help

**verizon   YAHOO!** MAIL

Search    Web Search

---

University of Phoenix

**BACHELOR'S DEGREES**
Business | Health Care Admin.
Education | Human Services
Nursing | Information Technology

**MASTER'S DEGREES**
MBA | Education | Information Systems

**DOCTORAL DEGREES**
Business Admin. | Health Admin.

Online and Campus Programs

**LEARN MORE ▶**

---

| **Mail** | Contacts | Calendar | Notepad |

Check Mail   New

What's New?   Mobile Mail   Options

Mail Search

Try the new Yahoo! Mail

Netflix
Only $4.99/mo.

Previous | Next | Back to Messages

Mark as Unread |   Print

Delete   Reply   Forward   Spam   Move...

**Folders**

Inbox (21)

Drafts (2)

Sent

Spam (237) [Empty]

Trash       [Empty]

My Photos

My Attachments

### Fax received by Rose Fields

From:    "Michael" <ramschiefs@yahoo.com>

To:    ramschiefs@yahoo.com

Wednesday, September 24, 2008 6:59 PM

Thanks Rose,

*Ro Fields <RoFields@restorative-therapies.com>* wrote:

Subject: Michael Pellicano
Date: Tue, 5 Aug 2008 16:02:51 -0400
From: "Ro Fields" <RoFields@restorative-therapies.com>
To: <ramschiefs@yahoo.com>

These are my notes from July 8, 2008:

RCVD FAX FROM "K. ELIG" (HANDWRITING IS NOT EXACTLY LEGIBLE) @ **BX** MD NOTING THAT DME REQUESTS FOR FEDERAL EMPLOYEES DO NOT REQ PRE-CERT EXCEPT FOR HOME HOSPICE. NO DIRECT TELEPHONE # LISTED - ONLY A DEPT. **VM** @ 800-334-3427. FAX #410-720-3122. FAX SENT BACK STATING THAT PER THE DIRECTOR OF OPM, DME PRE-SVC REVIEW FOR FEDERAL EMPLOYEES WENT INTO EFFECT AS OF FEBRUARY 2008....., ETC..... RCVD A TELEPHONE CALL SHORTLY THEREAFTER FROM A NURSE AT DELMARVA HEALTH PLAN (1-410-822-7223; THIS IS TYPICALLY THE BRANCH OF BX MD THAT HANDLES PRE-AUTH FOR **STRAIGHT MD MA** MEMBERS) WHO STATED THAT THE PAD PKG WAS FORWARDED TO HER. SHE STATED THAT THE MEDICAL DIRECTOR WOULD BE ISSUING A DECISION SHORTLY - MOST LIKELY A DENIAL FOR EXPERIMENTAL. REQUESTED THAT THE DECISION BE FAXED TO MY ATTN. AS WELL AS MAILED GIVEN THE PT'S TIME THAT HAS ALREADY BEEN WASTED IN DEALING WITH HIS HOME PLAN AS WELL AS THE LOCAL. HER ONLY RESPONSE WAS THAT IT WOULD MOST LIKELY BE MAILED TO THE MEMBER.

Mrs R. Fields
Reimbursement Manager
Restorative Therapies, Inc.
www.restorative-therapies.com
907 S. Lakewood Avenue
Baltimore, MD  21224

Phone: (800) 609-9166 x307
Fax:    (410) 878-2466

PRIVILEGED AND CONFIDENTIAL: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message. Thank you.

**Chat & Mobile Text** [Hide]

I am    Available

0 Online Contacts    [Add]

No contacts online right now.

**Start a New Chat**

0 Mobile Contacts    [Add]

You don't have any Mobile Text contacts yet.

**Start a Text Message**

**My Folders**
        [Add - Edit]
log in info
NIH appropriat...
Obama
pictures
RTI insurance


Mr. Michael V. Pellicano
209 E Line St
Olyphant, PA 18447

### e-mail notes Rose Fields 8-7-08

8-7-08 As per Rose Fields . These are notes from my conversation with Jan Swigert on August 6, 2008.RCVD CALL FROM JAN SWIGERT@ BC MD. SHE STATES THAT SHE IS THE DME AND HOME CARE MANAGER FOR BC MD. DIRECT #410-763-6310. SHE  SOME CLARIFICATION AS TO WHAT HAS TRANSPIRED C/THIS PROCESS. RAN IT DOWN TO HER FROM THE BEGINNING TO NOW.  SHE DID CONFIRM THAT THE SVC WAS DENIED  AND NOTIFICATION WOULD BE FORTHCOMING. HOWEVER, IT WOULD BE SENT DIRECTLY TO US AND NOT THE PATIENT.  THIS IS A SWITCH FROM THE NORM AS TO WHAT OTHER BC PLANS DO AND WHAT I WAS TOLD BY THE DELMARVA NURSE. WHY WOULD THE NOTIFICATION NOT BE SENT TO US AS WELL AS THE PATIENT??? WHEN ASKED ABOUT THE PT'S APPEAL OPTIONS, SHE STATED THAT THERE WAS NOTHING SET UP FOR FEP MEMBERS TO APPEAL A PRE-SERVICE REVIEW DENIAL INTERNALLY.  THE PT'S NEXT STOP WOULD BE TO ADDRESS THE DENIAL WITH OPM. HOWEVER, SHE COULD PROVIDE NO DEFINITIVE INFO ON WHO  OR WHAT DEPT THE PATIENT SHOULD CONTACT @ OPM TO APPEAL THIS DENIAL.  SHE DID ASK HOW DELMARVA GOT INTO THE MIX OF THIS.  EXPLAINED TO HER THAT IS HOW THE NURSE WHO CALLED ME IDENTIFIED HERSELF.  SHE THEN STATED THAT THIS WAS STRANGE AS THE DELMARVA HEALTH PLAN HMO IS NOW DEFUNCT. THAT MAY BE TRUE, BUT DELMARVA AS A FOUNDATION IS STILL ALIVE AND WELL IN THE SAME LOCATION WITH THE SAME TELEPHONE NUMBER.   THE HMO HEALTH PLAN MAY HAVE BEEN DISOLVED, BUT THEY ARE STILL OPERATING AS A BRANCH UNDER THE CAREFIRST BC MD UMBRELLA.  IF SHE CALLS DELMARVA TO MAKE A DME INQUIRY, THE OPERATOR WILL TRANSFER HER TO A DME VM BOX.  OPTION #1 REQUIRES THAT YOU HAVE A DIRECT EXTENSION NUMBER AND BC MD HAS NEVER BEEN ONE TO GIVE

Mr. Michael V. Pellicano
209 E Line St
Olyphant, PA 18447

*ENCLOSURE #7*

*PAGE 2 of 2*

e-mail  notes Rose Fields 8-7-08

THOSE OUT FREELY.  DID REITERATE TO MS. SWAGGERT THAT THE REAL PROBLEM IS THAT SOME IDIOT DECIDED TO INSTITUTE A DME PRE-SVC REVIEW MANDATE FOR FEDERAL EMPLOYEES BUT DIDN'T FOLLOW THROUGH.  HE OR SHE DID A HALF-**&$^# JOB IN DISPENSING THIS MANDATE AND ACTUALLY DEVISING ADMINISTRATIVE GUIDELINES – INCLUDING AN APPEAL PROCESS - FROM START TO FINISH.  SHE DIDN'T HAVE MUCH OF A COMMENT. AT THIS POINT, IT SEEMS THAT WE WILL HAVE TO WAIT UNTIL FEP ACTUALLY DISPENSES THE PRE-SERVICE DENIAL  - AFTER THEY COME UP WITH THE APPROPRIATE LANGUAGE TO COVER THEIR *(&*%*(*)(&*(^*&).

Page 2

Mr. Michael V. Pellicano
209 E Line St
Olyphant, PA 18447

CareFirst BlueCross BlueShield
Federal Employee Program
P.O. Box 801
Owings Mills, MD 21117
www.carefirst.com

*ENCLOSURE # 8*
*PAGE 1 OF 2*

8

# CareFirst
## BlueCross BlueShield

August 13, 2008

Restorative Therapies, Inc.
907 S Lakewood Avenue
Baltimore, MD 21224

Regarding:
Member Name:  Michael Pellicano
Member Number: R58740375
Servicing Provider: Restorative Therapies
Start of Treatment date: N/A
Primary Service code and description:    E1399, RT 300 S FES Cycle

## NOTICE OF COVERAGE DECISION

We are writing to provide you with written notice of a Coverage Decision regarding the above identified health care services based on a Pre-Service request for benefits that you have submitted. A "Coverage Decision" means an initial determination by the Plan that a health care service is not a covered benefit under the Federal Employee Program. The decision of the Plan is that benefits are NOT APPROVED for the requested health care services.

The Plan has denied coverage for the requested service because:

A medical director has reviewed the request for a RT300-S system. Based on the medical information received, it has been determined that the RT300-S system is maintenance equipment.  Benefits for the maintenance or palliative services are not covered according to page 39 of the 2008 Service Benefit Plan.

Pre-Service Review is a service provided by your Plan, but it is not a contractual requirement. Accordingly, the disputed claims process defined in the Blue Cross and Blue Shield Service Benefit Plan Brochure, including the right to appeal to OPM, does not apply to this decision.

If you have questions, please contact Federal Provider Service at 202-488-4900.

F17G29   CareFirst BlueCross BlueShield is the shared business name of CareFirst of Maryland, Inc. and Group Hospitalization
and Medical Services, Inc. which are independent licensees of the Blue Cross and Blue Shield Association.
® Registered trademark of the Blue Cross and Blue Shield Association.
®' Registered trademark of CareFirst of Maryland, Inc



Mr. Michael V. Pellicano
209 E Lme St
Olyphant, PA 18447

ENCLOSURE # 8
PAGE 2 OF 2

# Fax

## CareFirst.
### BlueCross BlueShield

| | | | |
|---|---|---|---|
| To: | Restorative Therapies | From: | Jan Swigert, RN |
| Attention: | Rose Fields | Date: | Manager<br>August 13, 2008 |
| Phone: | 800-609-9166; extension 307 | **Number of pages**<br>**Including cover sheet:** 2 | |
| Fax: | 410-878-2466 | **Phone:** 410-763-6310 | |
| RE: | Michael Pellicano | **Fax:** 410-505-2371 | |

Remarks: ☐ Urgent    ☐ For your review    ☐ Reply    ☐ Please comment

**Confidentiality Notice**

Unauthorized interception of this communication could be a violation of Federal and State Law. This communication and any files transmitted with it are confidential and may contain protected health information. This communication is solely for the use of the person or entity to which it was intended. If you are not the intended recipient, any use, distribution, printing or acting in reliance on the contents of this message is strictly prohibited. If you have received this message in error, please notify the sender and destroy any and all copies. Thank you.

CareFirst BlueCross BlueShield is the shared business name of CareFirst of Maryland, Inc. and Group Hospitalization and Medical Services, Inc. which are independent licensees of the Blue Cross and Blue Shield Association.
® Registered trademark of the Blue Cross and Blue Shield Association.
® Registered trademark of CareFirst of Maryland, Inc.



Mr. Michael V. Pellicano
209 E Line St
Olyphant, PA 18447

SEP 2 3 2008

PAGE # 1 of 5

The Honorable Paul E. Kanjorski
The Stegmaier Building
7 North Wilkes-Barre Boulevard
Suite 400 M
Wilkes-Barre, PA  18702-5283

September 17, 2008


Dear Representative Kanjorski:

We are in receipt of the information submitted from your office regarding the concerns of Mr. Michael Pellicano. Let us further address the situation and explain the Plan's actions.

The Plan was originally contacted by Mr. Pellicano on November 11, 2007. Mr. Joe Bumgarner, a customer service representative in the Durable Medical Equipment department, advised Mr. Pellicano that in order to do a preservice determination on the equipment, the provider would need to submit the request with a specific procedure code, charge amounts, sample claim, and medical records.

On November 11, 2007, the Durable Medical Equipment department received a letter of medical necessity from Dr. Gina M. Carlo. This included the diagnosis code and procedure code to be billed. The Plan responded to the provider stating that we had received the information.

On November 21, 2007, the Plan was contacted by Hanger Prosthetics Orthotics East, a durable medical equipment supplier. The provider was questioning whether the proposed equipment, an RT 300S FES (Functional Electrical Stimulation) Cycle, was a covered benefit. The provider was advised that this service was not eligible for benefits under the contractual limitations of the Plan.

On November 27, 2007, the member called the Plan and spoke to Ashley McCloy The member was advised that we coordinate benefits with Medicare, which is his primary insurance, and if Medicare paid primarily, the Plan would pay any remaining deductible, coinsurance, and copayment, and that if Medicare rejected the service, we would pay all allowable charges. Member was advised that in either case, the service had to be a covered benefit to be eligible for payment.

On November 27, 2007, the member also called and spoke to Joe Bumgarner in the Durable Medical Department. Mr. Pellicano was upset because his provider advised him that the service was not eligible with the diagnosis submitted. Mr. Pellicano advised he did not think that the diagnosis code was appropriate and said he would call his doctor and discuss.



Mr. Michael V. Pellicano
209 E Line St
Olyphant, PA 18447

*Enclosure # 9*
*Page # 2 of 5*

On January 17, 2008, Mr. Pellicano again spoke to Joe Bumgarner concerning a preservice review. The member stated that he had done a preservice review with Medicare, and they had denied benefits. The member was informed once more the correct procedure for a preservice review, both verbally over the phone and in writing.

On January 22, 2008, Mr. Pellicano spoke to Angela Knopp in the Durable Medical Equipment department, asking once again about preservice. Was advised once more that only the provider could submit preservice requests and what was needed. Mr. Pellicano asked if he could fax the request and was advised that it needed to be mailed.

On January 28, 2008, Mr. Pellicano called the Plan once more to advise that he had received the letter concerning the procedures for requesting a preservice review and the required information. The member advised that he had already talked to the doctor, and the doctor was supposed to have sent the request already. He wanted to know if it had been received, if it was with the proper department, and how long it would take. Mr. Pellicano was advised that we had not received the request as of this time, and he was told it generally takes about three weeks from the time we receive the request.

On February 4, 2008, Mr. Pellicano called the Plan to see if the preservice review had been received. He was advised that nothing from the provider had been received. Mr. Pellicano advised that he had spoken to the manufacturer of the equipment and was told that it had been covered previously by the Federal Employee Program, and asked the customer service representative if this was true. The customer service representative advised that it was not possible to find this information and advised the member that the equipment was eligible on a case-by-case basis based on medical necessity.

On February 8, 2008, Mr. Pellicano called the Plan to see if the preservice request had been received from the provider. He was informed that it had not been received.

On February 11, 2008 Mr. Pellicano called the Plan to see if the preservice request had been received from the provider. Again he was informed it had not been received Due to the fact that the request had not been received, Mr. Pellicano was given a fax number and advised that an exception would be made and the provider could fax the info.

On February 12, 2008, the Plan received the preservice request. It was forwarded to the appropriate area for review.

On February 14, 2008, Mr. Pellicano called the Plan to see if the preservice request had been received. He was advised that it had and that it was sent out for review. He was advised that it usually takes about three weeks for the review, and then a letter will be sent to the provider.

On February 25, 2008, Mr. Pellicano called the Plan to check on the status of the preservice request. He was advised that the review was still in process.



Mr. Michael V. Pellicano
209 E Lime St
Olyphant, PA 18447

On February 27, 2008, the Plan received a fax from Mr. Pellicano which included a sample claim showing the amounts, diagnosis, prescription, notes, and a letter of medical necessity. This information was sent to the preserve review person.

On March 3, 2008, Mr. Pellicano called the Plan to check on the status of the preservice request. He was advised that the review was still in process.

On March 4, 2008, after review by a non-partisan professional consultant, letters of denial were sent to Mr. Pellicano and the durable medical equipment supplier.

On March 7, 2008, Mr. Pellicano called the Plan to inquire about the status of the preservice review. He was advised that the service had been denied based on medical necessity. Mr. Pellicano asked if he could appeal the decision and was advised that he could not. Mr. Pellicano asked why the equipment had been approved for other members. He was advised it was a case-by-case review.

On March 11, 2008, Mr. Pellicano called the Plan requesting all information that had been used during the preservice review. All information on file was sent.

On March 18, 2008, Mr. Pellicano called the Plan advising he wanted a copy of policy E-40, which was used during the review of the preservice. Member also wanted to know how to appeal the decision, because the letter he received advised that he could do so. Mr. Pellicano was sent a copy of policy E-40. On March 25, 2008, Mr. Pellicano was called to advise that his inquiry was being worked on. The preservice inquiries are performed by a separate department and the letters are sent from there.

On March 19, 2008, Mr. Pellicano called the Plan requesting information regarding medical policy used during the review.  All information was faxed on or about March 25, 2008.

On March 20, 2008, Mr. Pellicano called the Plan asking about his request. He was advised it was being worked on.

On April 4, 2008, Mr. Pellicano called the Plan with questions concerning medical policy E-40.  His questions were answered and he was given a telephone number for Managed Care Services regarding the appeal he was requesting. This was the number for Health Management Services, which is who would do the appeal, and who originally denied the services.

Mr. Pellicano called again and was informed of the Health Management Services phone number that his doctor could call and discuss his case in a peer-to-peer review with the professional consultant.

On April 15, 2008, Mr. Pellicano called the Plan disputing the denial being based on policy E-40. He requested all materials used to establish the medical policy, all reference documentation, and all documentation from referenced medical studies. He was


Mr. Michael V. Pellicano
209 E Line St
Olyphant, PA 18447

transferred to the voice mail of the senior customer services representative who was working on his case.

On April 16, 2008, Mr. Pellicano called the Plan requesting more information pertaining to the medical policy and how decisions were made. He was given various web sites that may help. Mr. Pellicano was advised that he had been sent everything that could be released to him, and that he may want to contact his doctor to see if there is anything he has concerning this matter.

On April 24, 2008, the Plan received a written request from the member asking for all pertinent information that his denial letter stated he was entitled to. Mr. Pellicano was called by telephone and was advised that he had been sent all information and there was nothing else that was used during the review.

On May 1, 2008, Mr. Pellicano called the Plan requesting to speak to a supervisor. Agreed to leave a voice mail for a senior rep.

On May 9, 2008, a supervisor by the name of Rose contacted Mr. Pellicano and discussed the situation with him. He was advised that we have done everything that we could do.

On May 13, 2008, Mr. Pellicano called the Plan to speak to Rose, the supervisor that he had spoken to previously. She was not in, and the member was advised that a message would be left.

On May 15, 2008, Mr. Pellicano called the Plan to see if his case was being reviewed again. He was advised that we were doing what we could.

On June 9, 2008, a supervisor by the name of Mandy M. called Mr. Pellicano to advise him that upon further review, after contact with the durable medical equipment supplier, the equipment would be purchased and shipped from Maryland. Therefore, the claim would be processed by the Maryland Plan, per Federal Employee Program guidelines. Because of this, the member could possibly request a preservice review from the Maryland Plan. The local Plan contacted the Maryland Plan to see if they would do a preservice review for Mr. Pellicano. The Plan was advised that Maryland does not do preservice reviews. He was advised that the Plan had done all that it could. He was apologized to, and was advised that, per his contract with the Federal Employee Program, his only option was to file a lawsuit.

Preservice reviews are offered to members through their providers in order to determine if a service is eligible for benefits. Preservice reviews are not required of Plans, and not all Plans offer them. Those who do, such as us, do so as an added convenience for our members. Some of these reviews, such as Mr. Pellicano's, are done by Highmark's Health Management System. Unfortunately, Mr. Pellicano was given appeal rights by mistake. This was explained to him.



Mr. Michael V. Pellicano
209 E Line St
Olyphant, PA 18447

Per the contract between all Plan administrators and the Federal Employee Program, claims are to be administered and processed by the local Plan in which services are rendered. So, if a member see's a doctor or purchases durable medical equipment from a provider in Pennsylvania, the claim must be processed by that Plan. This is a contractual obligation. Hence, since Mr. Pellicano's durable medical equipment, an RT 300S FES (Functional Electrical Stimulation) Cycle, was going to be purchased from Maryland, the claim would have to be processed by that Plan, and thus any preservice review would have to be done by the Maryland Plan. The Pennsylvania Plan cannot approve a review for a claim that will not be processed in the Pennsylvania Plan's area. As stated above, it is not a requirement that Plans offer preservice reviews, and some, such as Maryland, chose not to.

It has been explained to Mr. Pellicano that his only option is to purchase the equipment himself, submit a claim to the appropriate Plan, and, if it is denied, proceed with the disputed claims process, which is referenced in his 2008 Service Benefit Plan handbook.

While the Plan understands Mr. Pellicano's concerns, we must abide by the contractual limitations as outlined by the 2008 Service Benefit Plan handbook.


Sincerely,


Preston Dabbs
Appeals Specialist
FEP Customer Service
P.O. Box 890037
Camp Hill, PA  17089-0037



Mr. Michael V. Pellicano
209 E Lline St
Olyphant, PA 18447

209 East Line Street
Olyphant, PA 18447
October 20, 2008

The Honorable Paul E. Kanjorski
The Stegmaier Building
7 North Wilkes-Barre Boulevard, Ste 400M
Wilkes-Barre, PA 18702-5283

Re:  Federal B/C B/S regarding RTI Eqt Coverage (DME)

Attention:  Cathy Wechsler

Dear Congressman Kanjorski:

Thank you for your help with this matter.  I received the copy of the letter sent to you by FEP Appeals Specialist Preston Dabbs dated September 17, 2008.  I would like to correct some of the statements made in that letter.

First of all, the issue I am asking your help with concerns a particular piece of durable medical equipment, an RT 300S FES Cycle. The dates and information cited in the letter from Mr. Dabbs (11/11/07 and 11/21/07) that mention Dr. Carlo (podiatrist) and Hangar Prosthetics have nothing to do with the issue regarding the FES Cycle. Any contact with Dr. Carlo and Hangar was related to the coverage for foot orthotics, an entirely separate claim.  Neither Dr. Carlo nor Hangar Prosthetics ever questioned the Plan by phone, letter, or email about the FES Cycle. Furthermore, if on 11/21/07, as Mr. Dobbs stated Hanger Prosthetics was advised that the FES cycle was not eligible for benefits under the federal Blue Cross Blue Shield plan, why was a preservice review done and why has this DME been covered in the past?

On 11-07-07 Joe Bumgarner of B/C B/S instructed me that before a pre-service review could be done, I would need to submit a letter of denial from Medicare.  That took well over a month for me to obtain.  When I notified him on 1/17/08 that I had received the denial, he told me that I didn't need it!  At this point he said that all I needed to submit was a letter of necessity from my doctor (Dr. Mylan Lam, a physiatrist) along with an invoice from the provider (RTI).

On 3/07/08, per Mr. Dabbs' letter, I asked about appeal options.  This is not true.  I did not inquire, nor was I informed, about appeal options at this time.

After my 3/11/08 request for information that was used in their decision, all that I was sent was the same information that I had already provided to the Plan for the pre-service review.  No information was sent regarding the basis for their decision.



Mr. Michael V. Pellicano
209 E Line St
Olyphant, PA 18447

According to my plan, I was entitled to all information used in making their decision. They cited policy E40 in their denial and supplied copy, yet, when I requested the referenced materials on page 3 of this policy over the course of several phone calls, I was told by supervisor Shannon Carpenter that they would only be able to supply HPCS code E0764. In addition, I was advised to go to the American Occupational Therapy Assn Inc website to obtain the materials referenced. However, to access this website, you must be a dues-paying Occupational Therapist.

Also, I was informed that my physician could call to discuss the decision. Dr. Lam, Kessler Institute of Rehab, by physician, called the number given and left messages for the medical director, but her calls were never returned.

On 5-9-08, per Mr. Dabbs' letter, I was not told that they had done all they could do. I was told that my case was being re-reviewed by supervisor Rose Beckett.

On 5-15-08, I was contacted by supervisor Mandy Myers, who sated that her manager Stacey Cale was re-reviewing my case. I explained that I was getting ready to send in my appeal and faxed her a copy on 5/18/08.

On 5/21/08, Ms. Myers contacted me as instructed by her manager Stacey Cale. She said a letter of apology would be sent because I had been given incorrect information. Because the provider was based in Maryland, I should have been instructed to go through the Carefirst Maryland Federal Blue Cross Blue Shield program, which she said does not do pre-service reviews (not true). She also stated that because the equipment is experimental (not true), it would not be covered anyway. (The equipment is FDA approved, which I pointed out to Ms. Myers). I received her letter of apology by fax on 5/30/08 (seven months after I began the process to get coverage).

Your help is appreciated in pursuing this matter. Please do what you can for me and others in the similar situations.

Sincerely,


Michael Pellicano
By Susan Pellicano, POA

Enclosures

209 East Line Street
Olyphant, PA 18447
July 7, 2008


Dear Congressman Kanjorski:

Attention:  Cathy Wechsler

   I am a retired, disabled letter carrier as a result a skiing accident which left me with a
C4 Asia C incomplete spinal cord injury, with movement in both arms and legs.  I have
Federal Blue Cross and Blue Shield health insurance  Any assistance you can give me in
obtaining coverage for this medically necessary and appropriate piece of rehab
equipment, an RT 300S leg and arm cycle, would be greatly appreciated.

   Since using the RT 300S FES (Functional Electrical Stimulation) cycle as an
outpatient at my own expense, I have experienced many benefits (strength, endurance,
and cardio).  Because my spasticity has decreased, I have been able to reduce spasticity
medication.  I have increased muscle mass which has added to strength of movement and
increased the amount of movement as well as the amount of sensation.  At a recent Asia
exam by Dr. Lam at Kessler Institute in New Jersey in April, it was confirmed that I have
improved from level Asia B to Asia C.  I have increased from approximately four miles
in a one-hour session to over eleven miles.  Using this equipment as an outpatient is
costly (the insurance pays nothing for this) in terms of the daily fee and the travel
expense, as I need someone to transport me there, and is not affordable to do more than
two sessions per week.  Having this FDA approved equipment at home would be the
answer to these problems and would allow me to use it daily, thus, increasing the
physical benefits to great degree.

   I have been working on getting prior approval for this equipment since 2007, and I am
frustrated.  I have been passed on to many, many insurance workers, having to repeat my
request over and over.  I have been given instructions on how to proceed, which I have
followed, only to be told afterward that the instructions given me were incorrect.  I have
lost much confidence in the system and would appreciate your help.  I have provided all
the necessary forms, doctor's letter of necessity, invoice, etc. But, as I have said, I am
hesitant to believe what I am told.

   As of 5-30-08, I had spoken many times with PA Blue Shield customer service
**representatives** Joe Bumgarner, Angie, Anita, Kelly, Nikki, Lisa, Justin and Amy.  In
addition, I have spoken many times with PA Blue Shield **supervisors** of customer
service, pre-service review and FEP program, Kelly, Shannon Carpenter, Rose Beckett



Mr. Michael V. Pellicano
209 E Line St
Olyphant, PA 18447

Congressman Kanjorski
Page 2
July 7, 2008


and Mandy Myers. The content of these calls should be available because I was told they would be recorded for quality and training purposes. I have been given false, misleading and contradictory information for six months, verbally and in writing, only to find on June 20 from OPM, not from Blue Shield, that preauthorization pre-service review for DME has been in effect since February 2008. After nine months of dealing with this issue and because of their negligence, I have suffered emotional stress, anxiety and have lost hundreds of hours of rehabilitation time. I feel that my rights were not being met and that my problem was constantly being pushed onto another employee of the Federal Blue Cross Blue Shield program.

Following is a run-down on this issue:

In **November 2007**, I contacted Blue Shield PA customer service for information on a preservice review of coverage for the RT 300S leg and arm cycle (durable medical equipment). I was told I would need to get a letter of denial of coverage from Medicare, my primary insurance.

In late **January 2008** after waiting over a month for a letter of denial from Medicare, I contacted Blue Shield PA a second time and was told I wouldn't need the Medicare letter of denial. However, I would need to send an invoice from the provider, Restorative Therapies Inc., Maryland along with a letter of necessity from my doctor to obtain a pre-service review. I promptly sent both items as required.

On **3-4-08** I received a letter of denial for coverage for this durable medical equipment. As stated in the letter of denial, I could have my doctor contact the medical director who made the denial determination for a peer-to-peer review. My doctor called and left messages at the number given and was never contacted. Also as instructed in the letter of denial, I had the right of an appeal and the right to be supplied with any documentation, criteria, policies, and reference material etc. used in making this decision.

Upon request, I was sent a copy of Highmark Medical Policy E-40 on **3-28-08**. On page three of this policy were referenced materials, of which I requested copies. After many phone calls to customer service representatives and supervisors, I was told by Shannon Carpenter, a preservice review supervisor, that they would be unable to supply the requested materials except for the HPCS code E0764 with she faxed on **4-25-08**.

While I was compiling my appeal, minus the additional reference material requested, which I documented, I was contacted **5-9-08** by Rose Beckett, Supervisor, Federal Employee Program Blue Shield PA, and told that my case was being re-reviewed. After failed attempts to contact Ms. Beckett on the status of the re-review, I tried to speak to a different supervisor. I was finally contacted by Mandy Myers, also a supervisor of the


Mr. Michael V. Pellicano
209 E Lane St
Olyphant, PA 18447

Congressman Kanjorski
Page 3
July 7, 2008

Federal Employee Program Blue Shield PA. She informed me that her manager Stacy
Cale was re-reviewing my case. I explained that I was ready to mail my appeal to the
address given in the letter of denial. I offered and faxed a copy of that appeal to Mandy
Myers on **5/18/08**. On **5-21-08** Mandy Myers contacted me, as per her manager Stacy
Cale and said she was sending me a letter *(after seven months)* apologizing: I was given
incorrect information. She stated that because the equipment manufacturer /provider was
based in Maryland, I should have been instructed to go through the CareFirst Maryland
Federal Blue Cross Blue Shield, which did not do preservice reviews. She also stated as
per Ms. Cale that because the equipment was experimental, it would not be covered
anyway. I explained to Miss Myers that if she checked the documentation provided, she
would find that the equipment was, in fact, FDA approved. After checking, she said, "I
see where it is FDA approved. I will point that out to my manager and call you back." I
contacted Miss Myers on **5-30-08**, and she said that her manager contacted Guyling
Lucas, a director at the Federal Employee's Program. Miss Myers told me that Mr. Lucas
attempted to get CareFirst BC BS Maryland to do a preservice review, and they said they
would not. I asked Miss Myers if Mr. Lucas was a federal employee or a Blue Shield
employee to which she replied, "Yes, a <u>federal employee.</u>" I received her letter of
apology by fax on **5-30-08**.

    I called OPM **6/2/08**, spoke to Charlotte and explained my situation and asked who I
could speak with about this insurance problem. I asked if Mr. Lucas was a federal
employee as per Miss Myers. No, per Charlotte, he works for PA, Blue Shield.

**6/5/08**: spoke with Bonita Wilson OPM insurance complaint department, asked for
assistance. She was very courteous and said she would make some calls and try to help.

**6/10/08**: Ms. Wilson, CareFirst Maryland would contact RTI and do a preservice review.

**6/18/08**: I contacted Ms. Wilson, explained that CareFirst had still not contacted RTI.
Same day, Ms. Wilson explained, RTI received a call from PA BS on 6-17-08 instructing
RTI to contact CareFirst.

**6/19/08**: RTI received call from PA BS instructing them to send claim to CareFirst BS.
Same day Ms. Fields of RTI explained in their dealings with CareFirst BS they would not
do preservice review. I would need OPM to direct CareFirst BS to do a preservice
review. Same day I informed Ms. Wilson of conversation with Ms. Fields RTI. Ms.
Wilson, same day, there was an error and that CareFirst would be contacting RTI
directly.



Mr. Michael V. Pellicano
209 Filine St
Olyphant, PA 18447

Congressman Kanjorski
Page 4
July 7, 2008


**6/20/08**:  Ms. Fields RTI contacted by Valerie Fowler FEP provider services supervisor on 6/19/08.  She was faxed a preauthorization/ preservice review request form for DME coverage from Care First B.C. BS Maryland.  Ms. Fields, as per Ms. Fowler, as of February 2008 preauthorization/ preservice review for DME was available for all federal Blue Cross Blue Shield.

**6-24-08**:  Ms. Fields of RTI sent a claim packet for preauthorization/preservice review to CareFirst Federal BC/BS Maryland.

After all this time and hard work trying to get a pre-authorization/ pre-service review for this one piece of durable medical equipment, I now have to start from scratch with Maryland Blue Cross Blue Shield!

Your help in getting coverage for this piece of equipment which means so much to my rehabilitation would be greatly appreciated.

Sincerely,



Michael V. Pellicano


Phone #570-489-1057



Mr. Michael V. Pellicano
269 E Line St
Olyphant, PA 18447

*ENCLOSURE # 12*
*PAGE 1 of 3*

209 East Line Street
Olyphant, PA 18447
May 13, 2008


Highmark
PO Box 535095
Pittsburgh, PA 15253-5095
Attention: Review Committee

Re: Patient:           Mr. Michael Pellicano
    Employer Group name:  Federal Employee Program
    Group ID:          105
    Member ID:        R5874037500
    Service Denied:     Request for Coverage of DME:  RT300-SLSA Leg & Arm
                                  FES System & Accessories
    Provider:          Restorative Therapies, Inc.

To Whom It May Concern:

       In response to your denial of request for coverage dated March 4, 2008 (copy enclosed), I am hereby appealing your decision.

       First of all, the durable medical equipment being requested, RT300-S FES system, should be covered as it meets all of the criteria as listed in my 2008 Blue Cross and Blue Shield (Federal Employees Health Benefits Program) Service Benefit Plan Booklet on Page 43.  My booklet, in an entire section dedicated to explaining important terms used in its plan, defines "Medical necessity" in **Section 10. Definitions of terms we use in this brochure** on Page 118. The DME requested meets all the criteria as outlined there, and I have submitted evidence of those facts (see additional enclosures).  My booklet states on Page 3 that "this brochure is the official statement of benefits."  Further, it states, "If you are enrolled in this Plan, you are entitled to the benefits described in this brochure."  Nowhere in the booklet is there a statement that it is an incomplete summary of benefits.  Nowhere does it refer to additional criteria. Nowhere are there footnotes or references to *our medical policy E-40,* which you are basing your decision on per your March 4, 2008 letter of denial of coverage.  I contest the inclusion of this policy as a criterion in your decision as it is in no way written into or even referred to by my Service Benefit Plan Booklet which is the only written explanation of benefits that participants generally receive.  Your inclusion of such in this important decision is even worse than the *fine print* that is found in contracts of less-than-reputable salespeople with less-than-reputable products.

       Secondly, Highmark Medical Policy Bulletin Number E-40's topic is "Neuromuscular Electrical Stimulation (NMES) Device **Used by Spinal Cord Injured Patients for Walking**." Its wordage begins, "Coverage of NMES/FES **for walking** will be..."  The DME I am requesting is not "equipment for walking."  It in no way assists a person to walk.  It is not even used by a patient in an upright position.  Nowhere in the literature enclosed does it describe it



Mr. Michael V. Pellicano
209 E Line St
Olyphant, PA 18447

Highmark
Page 2
March 13, 2008

as such a device. Its benefits do not list walking or a goal of walking. It is a device used to directly treat SCI patients for the complex neurological conditions which are well-detailed in the enclosed literature and letter of necessity. I do not believe that your medical policy E-40 was meant to address the coverage of the RT300-S FES system. This system does not fall in the same category as other NMES devices which are used for walking. Therefore, I do not believe Policy E-40 should apply to this case, even if it were deemed to be part of my plan.

On page 2 of Highmark Medical Policy Bulletin Number E-40, it states, "NOTE: ...Each person's unique clinical circumstances may warrant individual consideration, based on review of applicable medical records." I believe my unique circumstances do warrant individual consideration, based on a review of applicable medical records. The DME is medically necessary in my case. Additionally, further down on the same page of E-40, I question the statement under FEP Guidelines, which reads, "This medical policy may not apply to FEP. Medical policy is not an authorization, certification, explanation of benefits, or a contract. Benefits are determined by the Federal Employee Program." It seems right there that this Policy E-40 is not an applicable reference to my case.

On page 2 of your March 4, 2008 letter of denial, it is stated, "The goal of physical medicine must be to train SCI patients on the use of NMES/FES devices to achieve walking, not to reverse or retard muscle atrophy." Where and by whom is this goal stated? Where is it in my plan booklet? I believe there are many goals for physical medicine regarding SCI patients. Although a great benefit of the DME I am requesting may be to retard muscle atrophy, it certainly is not the primary benefit. It is not the benefit that is being sought or the reason it has been prescribed for me (per the letter of necessity enclosed). The many benefits of this system are well-detailed in the enclosed literature, which include the letter signed by my doctor, Dr. Lam, who is a highly-educated medical professional at one of the highest-rated SCI rehabilitation centers in the country, Kessler Institute of Rehabilitation, and also in the 7-page comprehensive explanation of <u>Benefits of FES Leg Cycle Ergometry Therapy</u> written by Dr. John McDonald of Johns Hopkins School of Medicine and Kennedy Krieger Institute of Baltimore.

In addition to the above, I would like you to consider the following. The denial letter states that I am entitled to copies of everything used in making your determination. On April 20, I requested such in my fax (copy enclosed). I indicated very clearly everything I wanted. On April 25, Shannon Carpenter, a supervisor at Blue Shield told me very clearly, in what she said was a recorded telephone call, that she would be unable to supply the requested information referenced in Policy E-40, except for a copy of the HCPCS code. Also, your denial letter states that my physician may discuss my case with a physician reviewer prior to initiating the formal appeal process. However, as of my last contact with Dr. Lam (my physician), she still has received no reply to her messages requesting such a discussion with



Mr. Michael V. Pellicano
209 E Line St
Olyphant, PA 18447

*SCHEDULE # 12*
*PAGE 3 OF 3*

Highmark
Page 3
March 13, 2008

your physician after leaving such messages at the number you stated in your denial letter for that purpose.

     The DME requested is medically necessary and appropriate for the treatment of my medical condition. It provides for the direct care and treatment of my condition, and is in accordance with good medical standard and practice. It is not primarily for my convenience and is the most appropriate supply that can be safely provided. I have submitted evidence to support these facts. You have not submitted applicable facts that clearly support your decision of denial.

     Since using this equipment as an outpatient at my own expense, I want you to know that I have already experienced many benefits. In the short period of time that I have used it, I have increased from approximately 4 miles in a session to an average of 11 miles (strength, endurance, cardio). I have been able to reduce spasticity medication by 25% and have increased muscle mass. Spasticity has decreased and allowed for additional strength of movement. I have increased amount of movement and sensation in both legs. Recently, an Asia exam by Dr. Lam confirms that I have improved from Asia B to Asia C. There is no other treatment that has given me these benefits, and I have thoroughly tried all treatments that have been suggested or prescribed.

     I await your review of this matter before pursuing it further.

          Sincerely,




          Michael Pellicano
          By Susan Pellicano, POA

Enclosures:  Letter of Denial dated March 4, 2008 – 2 pages
           RTI Invoice – 2 pages
           Allied Letter of Necessity – 4 pages
           Kennedy Krieger Institute "Benefits of FES Leg Cycle Ergometry Therapy" – 7 pgs
           My Fax dated April 20 Requesting Information used in Decision – 6 pages
           Copy of Note signed by Dr. Lam Certifying My Asia C status after exam dated
                                   4/15/08 – 1 pg



Mr. Michael V. Pellicano
209 E Lime St
Olyphant, PA 18447



*ENCLOSURE* *13*

*PAGE 1 OF 2*

OCT 2 1 2008



### UNITED STATES OFFICE OF PERSONNEL MANAGEMENT
#### Washington, DC 20415

Human Resources
Products and Services
Division

P200822476

The Honorable Paul E. Kanjorski
Member, U.S. House of Representatives
7 North Wilkes-Barre Boulevard, Suite 400M
Wilkes-Barre, PA 18702

OCT 15 2008

Dear Representative Kanjorski:

Thank you for your inquiry on behalf of Mr. Michael Pellicano regarding his health insurance coverage with the Blue Cross and Blue Shield (BCBS) Service Benefit Plan under the Federal Employees Health Benefits Program. Mr. Pellicano is requesting benefits for durable medical equipment, Functional Electrical Stimulation (FES) Cycle, to be purchased from Restorative Therapies, Inc.

Highmark BCBS of Pennsylvania (Highmark) reviewed a pre-service request submitted by Restorative Therapies, Inc., and determined benefits would not be provided for the equipment. Highmark incorrectly indicated Mr. Pellicano could file an appeal to the U.S. Office of Personnel Management per the disputed claims process in the BCBS Service Benefit Plan brochure. Pre-service review is not subject to the disputed claims process because it is not a contractual requirement.

However, Highmark should have not reviewed the appeal. The pre-service review should have been reviewed by CareFirst BCBS (Maryland) since the provider is in the CareFirst service area. The pre-service request was forwarded to CareFirst. CareFirst determined the equipment is maintenance equipment and thereby not a covered benefit. On July 11, 2008 BCBS informed the provider by telephone of their decision and also sent a letter on August 13, 2008.

As a result of your inquiry, BCBS informed us CareFirst will issue an addendum letter to the provider informing them if they wish to challenge the denial, they may submit additional clinical documentation in support of their request. BCBS will review the documentation and respond to the provider. BCBS regrets any inconvenience their errors may have caused Mr. Pellicano.

In addition, Mr. Pellicano requested a copy of the bulletin and guidelines for preauthorization and pre-review. The information he is requesting is proprietary and therefore we are unable to provide this information to him.



Mr. Michael V. Pellicano
209 E Line St
Olyphant, PA 18447

*CLOSSURE # 13*
*PAGE #2 of 2*

Honorable Paul Kanjorski

Page 2

I appreciate the opportunity to respond to your inquiry and hope this information is helpful in responding to Mr. Pellicano. If you have any questions or need further information, please contact me at (202) 606-0727.

Sincerely,

*Jean Kinevich*

Jean Kinevich
Health Benefits Contract Specialist
Insurance Services Program

Mr. Michael V. Pellicano
209 E Lime St
Olyphant, PA 18447

Support Our Troops



verizon YAHOO! MAIL

Mr. Michael V. Pellicano
209 E Line St
Olyphant, PA 18447

Support
Our
Troops

**RE: Mike Pellicano**

From: "Ro Fields" <rofields@restorative-therapies.com>
To: "Michael" <ramschiefs@yahoo.com>

Wednesday, August 18, 2010 11:25 AM

Kind regards,

No. we did not.

Mrs. R. Fields
Reimbursement Manager
Restorative Therapies, Inc.
www.restorative-therapies.com
907 S. Lakewood Avenue
Baltimore, MD. 21224
Phone: (800) 609-9166 x307
Fax:  (410) 878-2466

**PRIVILEGED AND CONFIDENTIAL:** The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail and delete the original message. Thank you.

This email / fax line meets all state and federal privacy guidelines for both outgoing and incoming data transfers of confidential PHI.

**From:** Michael [mailto:ramschiefs@yahoo.com]
**Sent:** Wednesday, August 18, 2010 10:49 AM
**To:** Ro Fields
**Subject:** Mike Pellicano

Ms. Fields, I received this E-mail from my congressmen . Please open attachment and refer to paragraph 4, did you ever receive an addendum from Carefirst? If not please let me know, if so please E-mail a copy to me thank you.
Mike Pellicano.

--- On Mon, 8/16/10, Wechsler, Cathy <cathy.wechsler@mail.house.gov> wrote:

From: Wechsler, Cathy <cathy.wechsler@mail.house.gov>
Subject: OPM Response
To: "Michael" <ramschiefs@yahoo.com>, "Eshenbaugh, Rebecca" <Rebecca.Eshenbaugh@mail.house.gov>
Date: Monday, August 16, 2010, 9:30 AM

This is the response I received from OPM dated Oct. 15, 2008.

0000084 7226491 000084 000084 0001/0001



**Explanation of Benefits**
THIS IS NOT A BILL

MAILROOM ADMINISTRATOR
PO BOX 14111
LEXINGTON, KY 40512-4111
(410) 581-3455    (800) 638-6756
TDD (410) 998-5500    (800) 892-1771

WWW.CAREFIRST.COM

>0000084 7226491 001 92022   000084
MICHAEL PELLICANO
209 E LINE ST
OLYPHANT PA  18447-2026

## EXPLANATION OF BENEFITS AT A GLANCE

| | |
|---|---|
| Patient Name:    MICHAEL | ID Number:        R58740375 |
| Dates of Service:    12/17/2008 - 12/17/2008 | Claim Number:     91149680EAF |
| | Claim Received On:  04/24/2009 |
| | Claim Processed On: 04/29/2009 |

Provider: RESTORATIVE THERAPIES                    Dates of Service: 12/17/2008 - 12/17/2008
Type:    NON-PARTICIPATING PROVIDER

| Type of Service | Submitted Charges | Plan Allowance | Remark Codes | Deduct | Coinsurance Or Copay | Medicare/ Other Ins. | What We Paid | You Owe the Provider |
|---|---|---|---|---|---|---|---|---|
| MEDICAL CARE | 20,697.00 | | 165 | | | | | 20,697.00 |
| TOTALS: | 20,697.00 | | | | | | | 20,697.00 |

### EXPLANATION OF REMARK CODES

165--BENEFITS ARE NOT PROVIDED FOR SERVICES/SUPPLIES LISTED IN THE GENERAL
EXCLUSIONS SECTION OF THE BLUE CROSS BLUE SHIELD SERVICE BENEFIT PLAN
BROCHURE.  YOU ARE RESPONSIBLE FOR THESE CHARGES EVEN IF THE
SERVICES/SUPPLIES WERE ORDERED BY A PROVIDER.

If you have questions, please call a customer service representative at your local BlueCross BlueShield
Plan. If you disagree with the decision on your claims or request for services, and wish to have the
decision reconsidered, you must notify your Plan in writing within 6 months from the date of this decision,
e.g. 10/29/2009. Your Plan will not accept unauthorized reconsiderations from providers.  See the Disputed
Claims Section of your Service Benefit Plan Brochure.



Mr. Michael V. Pellicano
209 E Line St
Olyphant, PA 18447

# Section 6. General exclusions – things we don't cover

The exclusions in this section apply to all benefits. There may be other exclusions and limitations listed in Section 5 of this brochure. **Although we may list a specific service as a benefit, we will not cover it unless we determine it is medically necessary to prevent, diagnose, or treat your illness, disease, injury, or condition** (see specifics regarding transplants).

We do not cover the following:

- Services, drugs, or supplies you receive while you are not enrolled in this Plan;

- Services, drugs, or supplies that are not medically necessary;

- Services, drugs, or supplies not required according to accepted standards of medical, dental, or psychiatric practice in the United States;

- Experimental or investigational procedures, treatments, drugs, or devices (see specifics regarding transplants);

- Services, drugs, or supplies related to abortions, except when the life of the mother would be endangered if the fetus were carried to term, or when the pregnancy is the result of an act of rape or incest;

- Services, drugs, or supplies related to sex transformations, sexual dysfunction, or sexual inadequacy (except for surgical placement of penile prostheses to treat erectile dysfunction);

- Services, drugs, or supplies you receive from a provider or facility barred or suspended from the FEHB Program;

- Services, drugs, or supplies you would not be charged for if you had no health insurance coverage;

- Services, drugs, or supplies you receive without charge while in active military service;

- Amounts charged that neither you nor we are legally obligated to pay, such as amounts over the Medicare limiting charge or equivalent Medicare amount as described in Section 4 under *Your costs for covered services*, or State premium taxes, however applied;

- Services, drugs, or supplies you receive from immediate relatives or household members, such as spouse, parent, child, brother, or sister, by blood, marriage, or adoption;

- Services or supplies (except for medically necessary prescription drugs) that you receive from a noncovered facility, such as an extended care facility or nursing home, except as specifically described in Sections 5(a) and 5(c);

- Services, drugs, or supplies you receive from noncovered providers except in medically underserved areas as specifically described on page 11;

- Services, drugs, or supplies you receive for cosmetic purposes;

- Services, drugs, or supplies for the treatment of obesity, weight reduction, or dietary control, except for office visits and diagnostic tests for the treatment of morbid obesity; gastric restrictive procedures, gastric malabsorptive procedures, and combination restrictive and malabsorptive procedures (see page 49); and, those nutritional counseling services specifically listed on pages 29, 47, and 64;

- Services you receive from a provider that are outside the scope of the provider's licensure or certification;

- Any dental or oral surgical procedures or drugs involving orthodontic care, the teeth, dental implants, periodontal disease, or preparing the mouth for the fitting or continued use of dentures, except as specifically described in Section 5(g), *Dental benefits*, and Section 5(b) under *Oral and maxillofacial surgery*;

- Orthodontic care for temporomandibular joint (TMJ) syndrome;

- Services of standby physicians;

- Self-care or self-help training;

- Custodial care;

- Personal comfort items such as beauty and barber services, radio, television, or telephone;

- Furniture (other than medically necessary durable medical equipment) such as commercial beds, mattresses, chairs;

- Routine services, such as periodic physical examinations; screening examinations; immunizations; and services or tests not related to a specific diagnosis, illness, injury, set of symptoms, or maternity care, except for those preventive services specifically covered under Preventive care, adult and child in Sections 5(a) and 5(c) and screenings specifically listed on pages 31-33;

- Recreational or educational therapy, and any related diagnostic testing, except as provided by a hospital during a covered inpatient stay;

- Topical Hyperbaric Oxygen Therapy (THBO); or

- Services not specifically listed as covered.


Mr. Michael V. Pellicano
209 E. Line St
Olyphant, PA 18447

*ENCLOSURE # 17*

*PAGE 1 OF 24*

209 East Line Street
Olyphant, PA 18447
March 6, 2009

BlueCross BlueShield Federal Employee Program
Mailroom Administrator
PO Box 14111
Lexington, KY 40512-4111

Re: ID Number:       R58740375
    Claim Number:   9002726596F
    Date of Service: 12/17/2008
    Insured:            Michael Pellicano

To Whom It May Concern:

Per directions on the enclosed EOB and Section 8. The disputed claims process of the Blue Cross and Blue Shield Service Benefit Plan 2008, I am requesting reconsideration of your decision.

Your explanation: #165—Benefits are not provided for services/supplies listed in the general exclusions section of the …plan brochure led me first to page 103, Section 6. General exclusions. I do not see where the durable medical equipment for which I am requesting coverage is listed on this page. I will address each item for which there could be the slightest relevance:

> I received the equipment while enrolled in the plan.

The item is medically necessary as it meets your definition on page 118 of Section 10:

1. It is appropriate to therapeutically treat my condition resulting from my spinal cord injury and to prevent serious secondary complications that inevitably arise for quadriplegics per my doctor's letter of medical necessity and the Kennedy Krieger Institute's report, both submitted with my claim. The report is very detailed, and states how there are NO other activity options that can provide the necessary treatment for patients with my injury.
2. It is consistent with standards of good medical practice in the U.S. As stated in my letter of medical necessity written by Dr. Mylan Lam of Kessler Institute of Rehabilitation and Dr. Stacey Cox of Allied Services Rehabilitation Hospital, "The American Academy of Physical Medicine and Rehabilitation Spinal Cord Injury Board supports the use of FES in neurological recovery of spinal cord injured patients, and its use is considered to be the standard of care and practice in the United States." In addition, as stated in my DME Claim Cover Letter, "Model Spinal Cord Injury System Centers



Mr. Michael V. Pellicano
209 E Line St
Olyphant, PA 18447

BlueCross BlueShield Federal Employee Program
Page 2
March 6, 2009

across the country, including by not limited to Craig Hospital, Shepherd Center, Boston University Medical Center, Kessler Institute for Rehabilitation and Mount Sinai Medical Center utilize the RT300-S as a <u>CRITICAL</u> rehabilitation tool in their acute care and rehab programs as a daily, ongoing treatment for their spinal cord injury and other neurologically impaired patients. These centers are the <u>LEADING OPINION MAKERS</u> for SCI (spinal cord injury) across the United States." The Blue Cross Blue Shield Federal Employee Program and Carefirst Maryland have already shown their agreement with its consistency with standard of good medical practice with their past coverage of this equipment for other claimants per the enclosed copies of approved EOB's.

3. It is not primarily for personal comfort or convenience. This is not a comfort or convenience item. It is needed to treat a devastating condition caused by injury. It is needed to treat primary neurological and secondary medical complications. They are outlined in my letter of necessity and the Kennedy Krieger report: spasticity, joint stiffness, muscle wasting, cardiopulmonary deconditioning, reduced pulmonary reserve, deep vein thrombosis, recurrent urinary tract infections, and risk of fractures and diabetes. It is primarily needed to treat musculoskeletal, cardiovascular, metabolism, and spasticity problems for persons, such as myself, with NO other activity options. Some of its positive results have already been experienced by me as evidenced by significant improvement in my condition after using it on a trial basis as documented in my letter of necessity.

4. It is not associated with scholastic education or vocational training. It is the only medical treatment of this kind available to treat my condition, and,

5. It is not requested for inpatient care. It is requested for home use.

It is not prescribed by a covered provider. It is prescribed by a physician, per my prescription and letter of necessity.

The RT300 is a long-established Standard of Care within the SCI medical community. This was discussed previously in this letter under #2 above (under medical necessity). Again, as it has already been approved for coverage by the Federal Employee Blue Cross Program per the enclosed EOB's, it must have already met this and many of the other requirements.

It is neither experimental nor investigational. It is FDA approved. The documentation of such was included in my claim and also detailed in the Kennedy Krieger report.


Mr. Michael V. Pellicano
209 E Lime St
Olyphant, PA 18447

*ENCLOSURE # 17*

*PAGE 3 OF 3*

BlueCross BlueShield Federal Employee Program
Page 3
March 6, 2009

It is not recreational. It requires a prescription, and its medical necessity is well-documented in my letter of necessity and accompanying information.

This durable medical equipment **is** covered per page 43 of the 2008 Benefit Plan Booklet under Durable Medical Equipment, as it:

1. **is** prescribed by my attending physician (well-documented in my claim packet);
2. **is** medically necessary (per my letter of medical necessity and the compliance with your definition of such as outlined above;
3. **is** primarily and customarily used only for a medical purpose (again, these facts are well-detailed in my claim packet);
4. **is** only useful (and only sold to) a person with an illness or injury— specifically, paralysis,
5. **is** designed for prolonged use (see the provider data); and
6. **does** serve a specific therapeutic purpose in the treatment of an illness or injury (well-documented in claim packet).

I look forward to your payment of this claim upon reconsideration. If payment is not made, I expect a detailed explanation of your reason for denial.

Sincerely,

Michael Pellicano
By Susan Pellicano POA

Enclosures:  EOB – Date of Service: 12/17/2008
RTI Invoice
DME Claim Cover Letter
Letter of Medical Necessity(3 pgs)
Prescription
Kennedy Krieger Inst Report(7 pgs)
RT300 Description (6 pgs)
FDA Listing
BCBS Payor List
EOB's/Payments-Past Approvals(6 pgs)



Mr. Michael V. Pellicano
209 E Lme St
Olyphant, PA 18447

**CareFirst BlueCross BlueShield**
Federal Employee Program
P.O. Box 14111
Lexington, KY 40512-4111

# CareFirst
## BlueCross BlueShield

September 23, 2009

Michael V. Pellicano
209 E. Line Street
Olyphant, PA 18447-2026

Patient:          Michael
Date of Birth:    12/14/58
Member ID:        R58740375
Claim Number:     91149680EAF
Date of Service:  12/17/08
Case Number:      0918714936

Dear Mr. Pellicano:

This letter is in response to your recent request for reconsideration regarding the processing of a claim for durable medical equipment provided to you on 12/17/08. This service was provided by Restorative Therapies, Inc., which is a Non-participating provider group. Your concerns to clarify the processing of the claim will be addressed in the following paragraphs.

As stated on page 6 of the 2008 Service Benefit Plan brochure, this Plan has established Preferred provider organization (PPO) arrangements. PPO benefits apply only when you use a PPO provider and the availability of every specialty in all areas cannot be guaranteed. If no PPO provider is available, or you do not use a PPO provider, the standard non-PPO benefits apply.

As stated on page 103 of the same brochure, under General exclusions, we do not provide benefits for services, drugs, or supplies that are not medically necessary or not specifically listed as covered.

As stated on page 111 of the same brochure, we waive some costs if the Original Medicare Plan is your primary payer. When Medicare Part B is primary, under Standard Option, we waive our:

- Calendar year deductible;
- Coinsurance for services and supplies provided by physicians and other covered health care professionals (inpatient and outpatient, including mental conditions and substance abuse care);
- Copayments for office visits to Preferred physicians and other health care professionals;
- Copayments for routine physical examinations and preventive (screening) services performed by Preferred physicians, other health care professionals, and facilities; and
- Outpatient facility coinsurance for medical, surgical, preventive, and mental conditions and substance abuse care.

As stated on page 117 of the same brochure, durable medical equipment (DME) is equipment and supplies that:

1. Are prescribed by your attending physician (i.e., the physician who is treating your illness or injury);
2. Are medically necessary;
3. Are primarily and customarily used only for a medical purpose;
4. Are generally useful only to a person with an illness or injury;
5. Are designed for prolonged use; and
6. Serve a specific therapeutic purpose in the treatment of an illness or injury.

CareFirst BlueCross BlueShield is an independent licensee of the Blue Cross and Blue Shield Association.
® Registered trademark of the Blue Cross and Blue Shield Association. ® Reg

**Support Our Troops**

Mr. Michael V. Pellicano
209 E Line St
Olyphant, PA 18447

CareFirst BlueCross BlueShield
Federal Employee Program
P.O. Box 14111
Lexington, KY 40512-4111



**BlueCross BlueShield**

As stated on page 118 of the same brochure, under Medical necessity, we determine whether services, drugs, supplies, or equipment provided by a hospital or other covered provider are:

1.  Appropriate to prevent, diagnose, or treat your condition, illness, or injury;
2.  Consistent with standards of good medical practice in the United States;
3.  Not primarily for the personal comfort or convenience of the patient, the family, or the provider;
4.  Not part of or associated with scholastic education or vocational training of the patient; and
5.  In the case of inpatient care, cannot be provided safely on an outpatient basis.

The fact that one of our covered providers has prescribed, recommended, or approved a service or supply does not, in itself, make it medically necessary or covered under this Plan.

As stated on page 119 of the same brochure, the Non-Participating Provider Allowance (NPA) is defined as an allowance equal to the greater of the Medicare participating fee schedule amount for the service or supply in the geographic area in which it was performed or obtained (or 60% of the billed charge if there is no equivalent Medicare fee schedule amount) or 100% of the 2008 Usual, Customary and Reasonable (UCR) amount for the service or supply in the geographic area in which it was performed or obtained.

In your letter you stated that benefits should be provided for the RT300 system due to your medical condition. The additional information you provided with your letter included a copy of Medicare's decision upholding their denial. This information is appreciated for an accurate review of the claim. We also requested the following information from the following providers:

Allied Services Rehabilitation Hospital, Stacy Cox, PT, DPT; Kennedy Krieger Institute, Dr. John McDonald; Kessler Institute in New Jersey, Dr. Mylan Lam; Physicians Health Alliance Inc.: Internal Medicine Family Practice; Dr. Joseph Greco; Dr. Claudia Jordan; and Dr. Shirish Bhatt:

*   All medical records including the initial history and physical, office records, evaluations, and diagnostic tests and results

In addition, you indicated on the Member Request for Assistance letters that Dr. Mark Reilly, Dr. James Harrop, and Dr. Jonathan Burns have treated you for the condition on the disputed claim. Therefore, we requested the following information from them:

*   All medical records including the initial history and physical, office records, evaluations, and diagnostic tests and results

We received the requested information from Allied Services Rehabilitation Hospital, Stacy Cox, PT, DPT, Dr. Joseph Greco, Dr. Mark Reilly, and Dr. James Harrop. We received a letter from Dr. John McDonald of Kennedy Krieger Institute indicating that he does not have any medical records to supply because you were never seen by him.

We forwarded the medical documentation received by Allied Services Rehabilitation Hospital, Stacy Cox, PT, DPT, Dr. Joseph Greco, and Dr. Mark Reilly to our Medical Review Department to determine if benefits could be provided for the RT300 system. Based upon this review, it was determined that this item meets the criteria for covered durable medical equipment. In addition, it was determined that this item was medically necessary for your condition as it was appropriate to treat your condition, illness, or injury and consistent with standards of good medical practice in the United States. Please make note that we did not receive medical records from Dr. James Harrop until after the medical review decision was made. Therefore, his records were not taken into account when the decision was made to provide benefits.

CareFirst BlueCross BlueShield is an Independent licensee of the Blue

Support Our Troops

Mr. Michael V. Pellicano
209 E Lime St
Olyphant, PA 18447

CareFirst BlueCross BlueShield
Federal Employee Program
P.O. Box 14111
Lexington, KY 40512-4111



**BlueCross BlueShield**

Consequently, benefits were provided on new claim number 91874936EAF. Please make note that we were advised by medical review to pay the claim using 65% of the billed charge as the Plan allowance. Since Medicare Part B was your primary insurance, we waived our coinsurance and paid benefits at 100% of the Plan allowance. Check number 000008 in the amount of $13,453.05 was issued to you today. Your total responsibility for this claim is $20,697.00.

You have the right to appeal this decision and may do so by writing to the U.S. Office of Personnel Management at the address appearing below. Your appeal must be submitted within 90 days of the date of this letter and must indicate why, based on specific benefit provisions of the BCBS Service Benefit Plan brochure, you believe that additional benefits should be provided. Your appeal letter must identify the specific claim(s) or services in question and must include a copy of the benefits determination (e.g. Explanation of Benefits, letter denying precertification or prior approval), a copy of your letter to our office requesting reconsideration, a copy of this letter, copies of the documents that support your appeal and your daytime telephone number. Mail your appeal to:

United States Office of Personnel Management
Insurance Services Programs
Health Insurance Group One
1900 E Street, NW
Washington DC 20415-3610

If you have any further questions regarding the appeals process, please contact us at 1-800-638-6756.

Sincerely,

*Michelle Dean*

Michelle Dean
Reconsideration Specialist
Federal Employee Program

CareFirst BlueCross BlueShield is an independent licensee of the Bl...
® Registered trademark of the Blue Cross and Blue Shield Association (®R...

Support Our Troops

Mr. Michael V. Pellicano
209 E Line St
Olyphant, PA 18447



**UNITED STATES OFFICE OF PERSONNEL MANAGEMENT**
Washington, DC 20415

Human Resources
Products and Services
Division

MICHAEL V PELLICANO
209 EAST LINE STREET
OLYPHANT PA 18447

FEB 2 2 2010

Dear Mr. Pellicano:

We have completed our review of your health benefits claim dispute (Y09350005/R58740375) with the Blue Cross and Blue Shield (BCBS) Service Benefit Plan (hereafter, Plan). The dispute concerns the Plan's level of benefits applied for a Functional Electrical Stimulation (FES) Cycle Ergometer. Restorative Therapies, Inc., a Non-participating provider, provided the durable medical equipment (DME) on December 17, 2008, totaling $20,697.00. After review of your appeal, we concur with the Plan's decision.

The Plan's brochure is the official statement of benefits for the BCBS Service Benefit Plan. The Plan is required to administer benefits according to the definitions, limitations, and exclusions set forth in the brochure. Our review process examines the Plan's actions to ensure that the Plan administered benefits according to the contract guidelines. As indicated on page 119 of the 2008 brochure, for physicians and other health care professional that do not contract with your local BCBS, our allowance is equal to the greater of 1) the Medicare participating fee schedule amount for the service or supply in the geographic area in which it was performed or obtained (or 60% of the billed charge if there no equivalent Medicare fee schedule amount) or 2) 100% of the 2008 Usual, Customary, and Reasonable (UCR) amount for the service or supply in the geographic area in which it was performed or obtained. However, CareFirst BCBS policy is to provide benefits at 65 percent of the billed amount, when there is no established allowance. The billed amount by the provider is $20,697.00, the Plan provided benefits at 65 percent of the billed charges. You are responsible for the remaining balance of $7,243.95.

You are requesting the Plan to provide additional benefits because the Plan brochure supports the use of 100 percent of the billed amount as the Plan allowance and because the UCR for other BCBS FEP members has been 100 percent of the submitted charges for the DME equipment in question. There is not a UCR or Medicare fee schedule amount for the DME in question. Therefore, the Plan provided benefits as indicated above. Also, we cannot direct the Plan to provide benefits based on information that you submitted of other BCBS enrollees. Our decision is based solely on the Plan's contract and its application to your disputed claim. Benefits were administered in accordance with the contract guidelines; therefore, we cannot direct the Plan to provide additional benefits. This is our final administrative review of this disputed claim. If you disagree with our decision, you may file suit against the Office of Personnel Management in Federal court.

Sincerely,

Debra Isaac
Insurance Benefits Claims Examiner
Insurance Operations

cc: CareFirst BCBS, BCBSA

 Mr. Michael Pellicano
209 E. Line St.
Olyphant, PA 18447

Page 119 2008 plan brochure

For physicians and other covered health care professionals that do not contract with your local Blue Cross and Blue Shield Plan, our allowance is equal to the greater of 1) the Medicare participating fee schedule amount for the service or supply in the geographic area in which it was performed or obtained (or 60% of the billed charge if there is no equivalent Medicare fee schedule amount) or 2) 100% of the 2008 Usual, Customary, and Reasonable (UCR) amount for the service or supply in the geographic area in which it was performed or obtained.  Local Plans determine the UCR amount in different ways.  Contact your Local Plan if you need more information.  We may refer to our allowance for Non-participating providers as the "NPA" (for "Non-participating Provider Allowance");

Mr. Michael V. Pellicano
209 E Line St
Olyphant, PA 18447