IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL V. PELLICANO, | : | CIVIL NO. 3:11-CV-406 |
| | : | |
| Plaintiff, | : | (Judge Slomsky) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| BLUE CROSS BLUE SHIELD | : | |
| ASSOCIATION, et al., | : | |
| | : | |
| Defendants. | : | |

**REPORT AND RECOMMENDATION**

**I.     Statement of Facts and of the Case.**

This is a *pro se* civil action brought by Michael Pellicano. Mr. Pellicano is an enrollee in a health benefits plan for federal employees. The plaintiff's 57-page civil complaint details a protracted, and often-frustrating, course of events spanning from 2007 through 2008, during which time Mr. Pellicano endeavored to secure approval from his health benefit plan to cover expenses associated with the acquisition of durable medical equipment. (Doc. 1) After detailing these experiences, which appear to reflect confusing and contradictory guidance provided to the plaintiff on a number of different occasions, Mr. Pellicano's complaint names a number of entities as defendants, including, the Blue Cross Blue Shield Association, Pennsylvania Blue Cross Blue Shield, CareFirst Blue Cross Blue Shield of Maryland, and the Office of Personnel Management, an agency of the United States government. According to Mr.

Pellicano, the errors committed in processing his claims for this medical equipment reflected "egregious bad faith, fraud, negligence, and arbitrary and capricious actions," conduct constituting a "breach of their fiduciary duties" by the defendants. (Id.) As a result of this alleged misconduct, Mr. Pellicano seeks "compensation for emotional distress, punitive damages, and reimbursement for any expenses incurred . . .in pursuit of this action" from all of the defendants. (Id.)

Presently before the Court is a motion to dismiss filed by the various Blue Cross Blue Shield defendants. (Doc. 6) This motion raises a threshold legal obstacle to this federal civil lawsuit, arguing that the Federal Employees Health Benefits Act, (FEHBA), 5 U.S.C. §8901, *et seq.*, which governs health benefits programs for federal employees, expressly preempts other laws with respect to complaints concerning receipt of benefits by enrollees, and provides that federal claims processing complaints be brought only against the Office of Personnel Management. (Id.) Because FEHBA preempts other laws in this field, and mandates that claims be brought solely against the Office of Personnel Management, the Blue Cross Blue Shield defendants seek to be dismissed from this case.

This motion has been fully briefed by the parties, (Docs. 7, 12 and 13), and is now ripe for resolution. While we acknowledge the difficulties encountered by the plaintiff, whose health insurance coverage experience has been protracted, marked by

contradictions, and enormously distressing, we are compelled to agree that the federal statutes which created this benefit program preempted other laws when it comes to challenges to claims precessing matters. Morever, we agree that the regulations adopted to implement this statute provide that only the Office of Personnel Management should be held to account for alleged errors and omissions in claims processing and insurance coverage. Therefore, it is recommended that the Blue Cross Blue Shield defendants be dismissed, and that Mr. Pellicano's complaint continue to proceed against the Office of Personnel Management, the federal agency that oversees this program, which is also named as a defendant in this action.

**II.     Discussion**

      **A.     Federal Law Preempts This Field and Provides That Disputes Regarding Benefits and Coverage Under Federal Employee Health Insurance Plans May Only Be Brought Against the Office of Personnel Management**

The Blue Cross Blue Shield defendants have filed a motion to dismiss this complaint, relying upon Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (12007) continuing with our opinion in <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008) and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action a

plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In our view, these heightened pleading standards apply to all aspects of the Court's threshold analysis of a complaint's legal sufficiency. Thus, we will apply this analysis both when assessing the adequacy of the factual assertions set forth in the complaint, and when examining whether a complaint states a viable cause of action.

In this case the Blue Cross Blue Shield defendants raise a threshold legal objection to being named as defendants in this lawsuit, the type of legal objection that is appropriately addressed through a motion to dismiss. There are two legal pillars to this objection, which when combined would defeat Mr. Pellicano's claims as to these particular defendants. First, the defendants assert that Congress, in enacting the federal Employee Helath Benefit Act, (FEHBA) 5 U.S.C. §8901, specifically preempted any other causes of action under state law challenging claims processing and health insurance coverage decisions for federal employees. In addition, the

defendants argue that the implementing regulations established under FEHBA only permit legal challenges to claims processing and coverage decisions to be brought against the Office of Personnel Management, an agency of the United States government. Therefore, defendants insist that this lawsuit, which seeks to hold the Blue Cross Blue Shield association liable on negligence, fraud and abuse of fiduciary responsibility theories for claims processing actions under FEHBA runs afoul of federal preemption and regulatory constraints which forbid such lawsuits.

In fact, it appears that, in enacting FEHBA, Congress has preempted many of the legal claims which program enrollees like Mr. Pellicano might wish to pursue. Congress' intent to significantly preempt this field of litigation between program beneficiaries and program providers was made unmistakably clear in FEHBA, which flatly states that: "The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans." 5 U.S.C. § 8902 (m)(1). The Supreme Court has aptly described the background, scope and rationale for this preemption rule in enrollee and provider disputes in the following terms:

> Under the Federal Employees Health Benefits Act of 1959 (FEHBA), the Office of Personnel Management (OPM) negotiates and regulates health-benefits plans for federal employees. See 5 U.S.C. § 8902(a). FEHBA provides for Government payment of about 75% of health-plan premiums, and for enrollee

> payment of the rest. § 8906(b).  Premiums thus shared are deposited in a special Treasury Fund, from which carriers draw to pay for covered benefits, § 8909(a). FEHBA has a preemption provision which provides: "The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law ... which relates to health insurance or plans." § 8902(m)(1). . . .  FEHBA's . . . jurisdictional provision vests federal district courts with "original jurisdiction ... of a civil action or claim against the United States." § 8912. [and] an OPM regulation channels disputes over coverage or benefits into federal court by designating OPM the sole defendant, see 5 CFR § 890.107(c) . . . ."

Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 677 (2006).

The implementing regulations governing FEHBA health benefit plans, in turn, provide for adjudication of disputes between enrollees and health care benefit carriers by OPM, 5 C.F.R. §890.105, and then permits aggrieved enrollees to bring civil actions in federal court, but provides that OPM is the sole defendant in these civil actions. 5 C.F.R. § 890.107(c).

Cases construing these statutory and regulatory provisions have generally held that FEHBA's preemption provision preempts lawsuits by FEHBA enrollees against carriers based upon breach of contract, breach of fiduciary trust, tort, negligence or fraud theories. See e.g., Botsford v. Blue Cross and Blue Shield of Montana, 314 F.3d 390 (9th Cir. 2002)(fraud, negligence and breach of contract claims preempted); Rievley v. Blue Cross Blue Shield of Tennessee, 69 F. Supp. 2d 1028 (E.D. Tenn. 1999)(breach of contract claim preempted); Kight v. Kaiser Foundation Health Plan

of Mid-Atlantic, 34 F. Supp. 2d 334 (E.D. Va. 1999)(tort and fraud claims preempted); Negron v. Patel, 6 F. Supp. 2d 366 (E.D. Pa. 1998) (negligence, breach of contract, breach of fiduciary duty, fraud and unfair trade practice claims preempted).  Thus, the very causes of action asserted by Mr. Pellicano in his complaint have, in the past, been held to be preempted by FEHBA.

In an effort to avoid this preemption principle, Mr. Pellicano argues that his lawsuit does not challenge a denial of coverage under FEHBA, but rather pursues claims against Blue Cross and Blue Shield based upon their allegedly inadequate and improper claims processing procedures.  This effort to draw a subtle distinction between matters of process and claims coverage decisions for preemption purposes is unavailing, however.  Indeed, courts have long rejected this subtle distinction.  For example, in Hayes v. Prudential Ins. Co. Of America, 819 F.2d 921 (9th Cir. 1987), the Court expressly rejected such an argument, in which a plaintiff attempted to avoid FEHBA preemption by asserting:

> that his state law claims are not preempted under section 8902(m)(1), because the claims relate to the manner in . . . Prudential *processed* his benefits, and not to the "nature or extent of coverage or benefits."  No such distinction can be made.  Tort claims arising out of the manner in which a benefit claim is handled are not separable from the terms of the contract. See Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213-20, 105 S.Ct. 1904, 1912-16, 85 L.Ed.2d 206 (1985) (state tort claim stemming from manner in which a Labor Management Relations Act insurance benefit claim was handled is not independent of insurance contract and therefore is preempted by federal law).  Moreover, the

claims "relate to" the plan under section 8902(m)(1) as long as they have a connection with or refer to the plan. Blue Cross, 791 F.2d at 1504.

Id. at 926. Thus, for preemption purposes under FEHBA, "[t]ort claims arising out of the manner in which a benefit claim is handled are not separable from the terms of the contract that governs benefits." Burkey v. Government Employees Hosp. Ass'n, 983 F.2d 656, 660 (5th Cir. 1993); Rievley v. Blue Cross Blue Shield of Tennessee, 69 F. Supp. 2d 1028, 1036 (E.D. Tenn. 1999).

These preemption principles apply with equal force to the statutory preemption provided for by FEHBA at 5 U.S.C. §8901(m)(1), and the related preemption provision embodied in FEHBA's implementing regulations, which call for adjudication of disputes between enrollees and health care benefit carriers by OPM, 5 C.F.R. §890.105, and then permit aggrieved enrollees to bring civil actions in federal court, but provides that OPM is the sole defendant in these civil actions. 5 C.F.R. § 890.107(c). Thus, courts have frequently required compliance with these regulatory requirements in actions brought by FEHBA enrollees, recognizing that these regulations, enacted pursuant to a statute which preempts this field, have a similarly preemptive effect. See Kobleur v. Group Hospitalization and Medical Services, Inc., 954 F.2d 705 (11th Cir. 1992). In sum, since "[f]ederal regulations preempt state laws in the same fashion as congressional statutes," Farina v. Nokia Inc., 625 F.3d 97, 115 (3d Cir. 2010), these FEHBA regulations, which prescribe OPM as the sole defendant

in a lawsuit challenging claims processing matters, preempt any other laws, and preclude a lawsuit against the Blue Cross Blue Shield defendants in this matter.

Thus, while we fully appreciate the events that have led Mr. Pellicano to file this action against the Blue Cross Blue Shield defendants, the fact remains that when Congress enacted this highly subsidized health care benefit system for federal employees it specifically preempted other laws, and carefully regulated the type of claims that enrollees may file. Under the system established by Congress, for program enrollees state law fraud, negligence, and breach of trust claims against carriers are preempted. But this does not mean that Mr. Pellicano and others in his situation are wholly without legal recourse. A legal path remains clear for federal health benefit program enrollees in the form of a lawsuit against the Office of Personnel Management, which oversees this program. Therefore, Mr. Pellicano can continue to pursue claims against OPM.

In his pleadings, Mr. Pellicano makes one final request, asking that the Court consider giving him leave to amend his pleadings if it finds his current complaint to be insufficient. (Doc. 12) We recognize that in certain cases *pro se* plaintiffs should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in

undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). In this case, we find that any effort by Mr. Pellicano to amend his claims against the Blue Cross Blue Shield clients for alleged tortious or otherwise unlawful conduct with respect to the alleged mishandling of his medical insurance claims would be futile. As explained above, as an enrollee in a federal health benefits program, plaintiff is limited to pursuing his claims against OPM. Because plaintiff's claims in this case against the Blue Cross Blue Shield defendants are entirely preempted, they must be dismissed, and we can perceive no additional allegations that Mr. Pellicano might advance that could cause his permit his claims against the Blue Cross Blue Shield defendants to survive in this action. Instead, plaintiff must prosecute his claims stemming from this insurance dispute against OPM as the sole defendant. In fact, he has brought claims against OPM, and those claims are presently being litigated. For these reasons, we recommend that plaintiff's claims against the Blue Cross Blue Shield defendants be dismissed without leave to amend the claims, as any such amendment would be futile

### III. Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' Motion to Dismiss (Doc. 6) be GRANTED and the complaint be dismissed as to the Blue Cross Blue Shield defendants.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 11th day of August 2011.

                                          ***S/Martin C. Carlson***
                                          Martin C. Carlson
                                          United States Magistrate Judge