## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL V. PELLICANO,** | : | **CIVIL NO. 3:11-CV-406** |
| | : | |
| **Plaintiff,** | : | **(Judge Slomsky)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **OFFICE OF PERSONNEL** | : | |
| **MANAGEMENT, et al.,** | : | |
| | : | |
| **Defendants,** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

This case is one of two related *pro se* civil actions brought by Michael Pellicano.  Mr. Pellicano is an enrollee in a health benefits plan for federal employees. The plaintiff's 57-page civil complaint in this matter describes a protracted, and often-frustrating, course of events spanning from 2007 through 2008, during which time Mr. Pellicano endeavored to secure approval from his health benefit plan to cover expenses associated with the acquisition of durable medical equipment. (Doc. 1) After detailing these experiences, which appear to reflect confusing and contradictory guidance provided to the plaintiff on a number of different occasions, Mr. Pellicano's complaint names a number of entities as defendants, including the Office of Personnel Management, an agency of the United States government, and the Blue Shield Association, Pennsylvania Blue Cross Blue Shield, CareFirst Blue Cross Blue Shield

of Maryland.[1]   According to Mr. Pellicano, the errors committed in processing his claims for this medical equipment reflected "egregious bad faith, fraud, negligence, and arbitrary and capricious actions," conduct constituting a "breach of their fiduciary duties" by OPM and others.   (Id.)   As a result of this alleged misconduct, Mr. Pellicano seeks "compensation for emotional distress, punitive damages, and reimbursement for any expenses incurred . . .in pursuit of this action" from OPM. (Id.)

At the same time that Mr. Pellicano brought this action against OPM for consequential damages arising out of that agency's past decisions relating to his health care coverage, he also brought a separate, companion action, Pellicano v. OPM, No. 3:11-CV-405.   In this separate civil action Mr. Pellicano named the Office of Personnel Management, an agency of the United States Government, as a defendant, alleged that the benefit denial decision of the OPM was arbitrary and capricious, and sought the remedy specified by statute and regulation in cases of this type–reimbursement of $7,243.95 in benefits that were allegedly erroneously denied under FEHBA by OPM.   For its part, OPM has acknowledged that Pellicano may maintain this action in  Pellicano v. OPM, No. 3:11-CV-405, seeking judicial review of this benefits denial decision, and is entitled to relief in the form of an order

---

[1]These health benefits plans have been dismissed from this action.  Thus, only OPM remains as a defendant in this case at present.

reimbursing those expenses that were initially not allowed by OPM if he prevails in this lawsuit.

Thus, it is important to recognize at the outset that, in this case, Mr. Pellicano has brought two separate actions against OPM.  One action–<u>Pellicano v. OPM</u>, No. 3:11-CV-405– is brought under the statute authorizing the creation of the Federal Employee Health Benefit plans, the Federal Employee Health Benefit Act, (FEHBA) 5 U.S.C. §8901.  That lawsuit seeks the relief authorized by federal law, judicial review of this benefits denial decision, and relief in the form of an order reimbursing those expenses that were initially not allowed by OPM.  Mr. Pellicano's entitlement to bring this separate action is not challenged by OPM in any way in this litigation.

Instead, what OPM disputes in the instant case is the ability of Mr. Pellicano in this companion case to also bring a distinct claim against this federal agency for "egregious bad faith, fraud, negligence, and arbitrary and capricious actions," and "breach of their fiduciary duties," as well as Mr. Pellicano's demand in this case for relief beyond that authirized by Congress in the  the Federal Employee Health Benefit Act, (FEHBA) 5 U.S.C. §8901; namely, "compensation for emotional distress, punitive damages, and reimbursement for any expenses incurred . . .in pursuit of this action."

The legal question of whether Mr. Pellicano may sue this agency on claims beyond those authorized by statute and seek relief beyond that permitted by law is now

presented to us in the motion to dismiss filed by OPM. (Doc. 32)  This motion raises threshold legal obstacles to this federal civil lawsuit, arguing that the Federal Employees Health Benefits Act, (FEHBA), 5 U.S.C. §8901, *et seq*., which governs health benefits programs for federal employees, expressly preempts other laws with respect to complaints concerning receipt of benefits by enrollees.  According to OPM, federal claims processing complaints may only be brought against the Office of Personnel Management, and the sole relief that is available in these cases is reimbursement of claims that were erroneously denied. (Id.)  Because FEHBA preempts other laws in this field, mandates that claims be brought solely against the Office of Personnel Management, and only authorizes relief in the form of reimbursement of claims that were erroneously denied, OPM seeks to be dismissed from this case.

This motion has been fully briefed by the parties, (Docs. 32, 33, 35, and 36), and is now ripe for resolution.  While we acknowledge the difficulties encountered by the plaintiff, whose health insurance coverage experience has been protracted, marked by contradictions, and enormously distressing, we are compelled to agree that the federal statutes which created this benefit program preempted other laws when it comes to challenges to claims precessing matters.  Morever, we agree that the regulations adopted to implement this statute provide that only the Office of Personnel Management should be held to account for alleged errors and omissions in claims

processing and insurance coverage, and that the relief which may be afforded to a plaintiff in these cases shall: "be limited to a court order directing OPM to require the carrier to pay the amount of benefits in dispute." 5 C.F.R. § 890.107(c). Therefore, it is recommended that OPM's motion to dismiss be granted in this case , and that Mr. Pellicano continue to proceed against the Office of Personnel Management, the federal agency that oversees this program, in the related case, action–<u>Pellicano v. OPM</u>, No. 3:11-CV-405 where Pellicano seeks the relief to which he is entitled by law–"a court order directing OPM to require the carrier to pay the amount of benefits in dispute." 5 C.F.R. § 890.107(c).

## II.   <u>Discussion</u>

### A.   <u>Motion to Dismiss-Standard of Review</u>

OPM has filed a motion to dismiss in this action arguing that considerations of preemption and sovereign immunity prevent Mr. Pellicano from pursuing claims against this federal agency beyond those expressly authorized by statute. The defendant advances this claim through a motion to dismiss this complaint, relying upon Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008) and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff.  <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged."  <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).  As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action a

plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level."  Id.  In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950.  According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947.  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950.  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).  In our view, these heightened pleading standards apply to all aspects of the Court's threshold analysis of a complaint's legal sufficiency. Thus, we will apply this analysis both when assessing the adequacy of the factual assertions set forth in the complaint, and when examining whether a complaint states a viable cause of action.

**B.** **OPM May Not Be Sued on Claims Beyond Those Authorized by the Federal Employee Health Benefit Act, (FEHBA) 5 U.S.C. §8901**

In this case OPM raises threshold legal objections to being named as a defendant in this lawsuit, where Mr. Pellicano charges this federal agency with "egregious bad faith, fraud, negligence, and arbitrary and capricious actions," and "breach of their fiduciary duties," and demands relief beyond that authorized by Congress in the the Federal Employee Health Benefit Act, (FEHBA) 5 U.S.C. §8901; namely, "compensation for emotional distress, punitive damages, and reimbursement for any expenses incurred . . .in pursuit of this action." OPM takes this position in the instant case, while candidly acknowledging that Mr. Pellicano may continue to proceed against the Office of Personnel Management, the federal agency that oversees this program, in the related case, action, <u>Pellicano v. OPM</u>, No. 3:11-CV-405, where Pellicano seeks the relief to which he is entitled by law: "a court order directing OPM to require the carrier to pay the amount of benefits in dispute." 5 C.F.R. § 890.107(c).

OPM's objections to the instant lawsuit advanced by Mr. Pellicano, which seek relief beyond that permitted by statute, rest on several legal pillars. First, OPM asserts that Congress, in enacting the Federal Employee Health Benefit Act, (FEHBA) 5 U.S.C. §8901, specifically preempted any other causes of action under state law

challenging claims processing and health insurance coverage decisions for federal employees.  In addition, OPM argues that the implementing regulations established under FEHBA only permit legal challenges to claims processing and coverage decisions to be brought against the Office of Personnel Management, and then only permits relief in the form of a "a court order directing OPM to require the carrier to pay the amount of benefits in dispute." 5 C.F.R. § 890.107(c).  Furthermore, OPM insists that, under this statutory scheme, it owes no fiduciary duty to Mr. Pellicano beyond the responsibilities outline in the Federal Employee Health Benefit Act, (FEHBA) 5 U.S.C. §8901 itself, and that any other claims against this federal agency are, therefore, barred by the doctrine of sovereign immunity.  Accordingly, OPM insists that this lawsuit, which seeks to hold this federal agency liable on negligence, fraud and abuse of fiduciary responsibility theories for claims processing actions under FEHBA runs afoul of sovereign immunity, federal preemption and regulatory constraints which forbid such lawsuits.

In fact, it appears that, in enacting FEHBA, Congress has preempted many of the legal claims which program enrollees like Mr. Pellicano might wish to pursue. Congress' intent to significantly preempt this field of litigation between program beneficiaries and program providers was made unmistakably clear in FEHBA, which flatly states that: "The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect

to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans." 5 U.S.C. § 8902 (m)(1). The Supreme Court has aptly described the background, scope and rationale for this preemption rule in enrollee and provider disputes in the following terms:

> Under the Federal Employees Health Benefits Act of 1959 (FEHBA), the Office of Personnel Management (OPM) negotiates and regulates health-benefits plans for federal employees. See 5 U.S.C. § 8902(a). FEHBA provides for Government payment of about 75% of health-plan premiums, and for enrollee payment of the rest. § 8906(b). Premiums thus shared are deposited in a special Treasury Fund,  from which carriers draw to pay for covered benefits, § 8909(a). FEHBA has a preemption provision which provides: "The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law ... which relates to health insurance or plans." § 8902(m)(1). . . .   FEHBA's . . . jurisdictional provision vests federal district courts with "original jurisdiction ... of a civil action or claim against the United States." § 8912. [and] an OPM regulation channels disputes over coverage or benefits into federal court by designating OPM the sole defendant, see 5 CFR § 890.107(c) . . . ."

Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 677 (2006).

The implementing regulations governing FEHBA health benefit plans, in turn, provide for adjudication of disputes between enrollees and health care benefit carriers by OPM, 5 C.F.R. §890.105, and then permits aggrieved enrollees to bring civil actions in federal court, but provides that OPM is the sole defendant in these civil actions. 5 C.F.R. § 890.107(c).  These regulations further prescribe the sole remedy available to claimants like Mr. Pellicano, stating that the relief which may be afforded to a plaintiff

shall "be limited to a court order directing OPM to require the carrier to pay the amount of benefits in dispute." 5 C.F.R. § 890.107(c).

Cases construing these statutory and regulatory provisions have generally held that FEHBA's preemption provision preempts lawsuits by FEHBA enrollees against insurers based upon breach of contract, breach of fiduciary trust, tort, negligence or fraud theories.  See e.g., Botsford v. Blue Cross and Blue Shield of Montana, 314 F.3d 390 (9th Cir. 2002)(fraud, negligence and breach of contract claims preempted); Rievley v. Blue Cross Blue Shield of Tennessee, 69 F. Supp. 2d 1028 (E.D. Tenn. 1999)(breach of contract claim preempted); Kight v. Kaiser Foundation Health Plan of Mid-Atlantic, 34 F. Supp. 2d 334 (E.D. Va. 1999)(tort and fraud claims preempted); Negron v. Patel, 6 F. Supp. 2d 366 (E.D. Pa. 1998) (negligence, breach of contract, breach of fiduciary duty, fraud and unfair trade practice claims preempted).  Thus, the very causes of action asserted by Mr. Pellicano in his complaint have, in the past, been held to be preempted by FEHBA in actions brought by plan participants against health insurers.

Nor can Mr. Pellicano assert that he has some greater right to maintain an action against OPM because that agency owed him some independent, free-standing, individual fiduciary duty.  Quite the contrary, as a general rule "the OPM owes no fiduciary duties to [benefit plan participants].  In fact,. . . the primary duty of the OPM

under the FEHBA is to the government.  The OPM must maximize the benefits

flowing from the federal employee health plans while minimizing the cost to the

government; the welfare of the federal employees enrolled in the plans, while certainly

relevant, is not the OPM's controlling obligation." Bridges v. Blue Cross and Blue

Shield Ass'n, 935 F.Supp. 37, 44 (D.D.C. 1996).

In an effort to avoid these preemption principles, Mr. Pellicano argues that his

lawsuit does not challenge a denial of coverage under FEHBA, but rather pursues

claims based upon OPM's allegedly inadequate and improper claims processing

review procedures.  This effort to draw a subtle distinction between matters of process

and claims coverage decisions for preemption purposes is unavailing, however.

Indeed, courts have long rejected this subtle distinction when considering FEHBA

preemption claims in the context of lawsuits brought against health insurers.  For

example, in Hayes v. Prudential Ins. Co. Of America, 819 F.2d 921 (9th Cir. 1987),

the court expressly rejected such an argument, in which a  plaintiff attempted to avoid

FEHBA preemption by asserting:

> that his state law claims are not preempted under section 8902(m)(1), because
> the claims relate to the manner in . . . Prudential *processed* his benefits, and not
> to the "nature or extent of coverage or benefits." No such distinction can be
> made. Tort claims arising out of the manner in which a benefit claim is handled
> are not separable from the terms of the contract. See Allis-Chalmers Corp. v.
> Lueck, 471 U.S. 202, 213-20, 105 S.Ct. 1904, 1912-16, 85 L.Ed.2d 206 (1985)
> (state tort claim stemming from manner in which a Labor Management
> Relations Act insurance benefit claim was handled  is not independent of
> insurance contract and  therefore is preempted by federal law). Moreover, the

claims "relate to" the plan under section 8902(m)(1) as long as they have a connection with or refer to the plan. <u>Blue Cross</u>, 791 F.2d at 1504.

<u>Id.</u> at 926.  Thus, for preemption purposes under FEHBA, "[t]ort claims arising out of the manner in which a benefit claim is handled are not separable from the terms of the contract that governs benefits." <u>Burkey v. Government Employees Hosp. Ass'n</u>, 983 F.2d 656, 660 (5th Cir. 1993); <u>Rievley v. Blue Cross Blue Shield of Tennessee</u>, 69 F. Supp. 2d 1028, 1036 (E.D. Tenn. 1999).

These preemption principles apply with equal force to the statutory preemption provided for by FEHBA at 5 U.S.C. §8901(m)(1), and the related preemption provision embodied in FEHBA's implementing regulations, which call for adjudication of disputes between enrollees and health care benefit carriers by OPM, 5 C.F.R. §890.105, and then permit aggrieved enrollees to bring civil actions in federal court, but provide that OPM is the sole defendant in these civil actions, and further specify that the only relief which may be afforded to a plaintiff shall "be limited to a court order directing OPM to require the carrier to pay the amount of benefits in dispute." 5 C.F.R. § 890.107(c).  Thus, courts have frequently required compliance with these regulatory requirements in actions brought by FEHBA enrollees, recognizing that these regulations, enacted pursuant to a statute which preempts this field, have a similarly preemptive effect. <u>See</u> <u>Kobleur v. Group Hospitalization and Medical Services, Inc.</u>, 954 F.2d 705 (11th Cir. 1992).  In sum, since "[f]ederal

regulations preempt state laws in the same fashion as congressional statutes," Farina v. Nokia Inc., 625 F.3d 97, 115 (3d Cir. 2010), these FEHBA regulations, which prescribe OPM as the sole defendant in a lawsuit challenging claims processing matters, and only permit relief in the form of a "court order directing OPM to require the carrier to pay the amount of benefits in dispute," 5 C.F.R. § 890.107(c), preempt any other laws, and preclude any other lawsuits in this arena.

Beyond the preemption doctrine, considerations of sovereign immunity also prevent us from entertaining this claim. As a general rule, actions against the United States – and, by extension, against federal agencies or officials sued in their official capacity – are barred by sovereign immunity, absent an explicit waiver of that immunity. FDIC v. Meyer, 510 U.S. 471, 483 (1994); Huberty v. United States Ambassador to Costa Rica, 316 F. App'x 120 (3d Cir. Aug. 21, 2008); Douglas v. United States, 285 F. App'x 955 (3d Cir. 2008); Jaffee v. United States, 592 F.2d 712, 717 (3d Cir. 1979); Bell v. Rossott, 227 F. Supp. 2d 315, 320 (M.D. Pa. 2002) In this particular legal and factual context, given this federal preemption and the narrow scope of the relief provided for by FEHBA, it is generally agreed that the Act and its regulations:

> [L]imit the role of the courts in a benefits dispute: A covered individual may seek judicial review of OPM's final action on the denial of a health benefits claim. A legal action to review final action by OPM involving such denial of health benefits must be brought against OPM and not

against the carrier or carrier's subcontractors. The recovery in such a suit shall be limited to a court order directing OPM to require the carrier to pay the amount of benefits in dispute.5 C.F.R. § 890.107(c). *[Thus] Congress clearly intended a limited waiver of sovereign immunity in Benefits Act disputes-courts only have jurisdiction to review final actions, after exhaustion, and only one remedy is available.*

Bryan v. Office of Personnel Management,  165 F.3d 1315, 1318 (10th Cir. 1999)(emphasis added).

Accordingly, citing these considerations of sovereign immunity and preemption it has been held that individuals like Mr. Pellicano who are aggrieved by the denial of benefits may not separately sue OPM to recover consequential damages. See Collicchio v. Office of Personnel Management, No. 10-15, 2011 WL 382403 (D. Md. Feb. 3, 2011).

Thus, while we fully appreciate the events that have led Mr. Pellicano to file this action, the fact remains that when Congress enacted this highly subsidized health care benefit system for federal employees it specifically preempted other laws, and carefully regulated the type of claims that enrollees may file.  Under the system established by Congress, for program enrollees state law fraud, negligence, and breach of trust claims against OPM  are both preempted and barred by sovereign immunity. But this does not mean that Mr. Pellicano and others in his situation are wholly without legal recourse.  A legal path remains clear for federal health benefit program enrollees in the form of a lawsuit against the Office of Personnel Management, which oversees this program for the relief authorized by statute, a court order directing OPM

to require the carrier to pay the amount of benefits in dispute.5 C.F.R. § 890.107(c). Indeed, as we have noted, Mr. Pellicano is pursuing precisely this type of claim in a separate action, Pellicano v. OPM, 3:11-CV-405 (M.D.Pa.). Therefore, Mr. Pellicano can continue to pursue these separate claims against OPM.

We recognize that in certain cases *pro se* plaintiffs should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote   Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  In this case, we find that any effort by Mr. Pellicano to amend his complaint against OPM for alleged tortious or otherwise unlawful conduct with respect to the alleged mishandling of his medical insurance claims would be futile since these claims are both preempted and barred by sovereign immunity.  Because plaintiff's claims in this case against OPM are entirely preempted and barred by sovereign immunity, they must be dismissed, and we can perceive no additional allegations that Mr. Pellicano might advance that could cause his claims against OPM to survive in this action.  For these reasons, we recommend that plaintiff's claims against OPM be dismissed without leave to amend the claims, as any such amendment would be futile

### C.    Mr. Pellicano Is Not Entitled to a Default Judgment

Having addressed the merits of Mr. Pellicano's claims, we turn briefly to one other matter, a motion for entry of default filed by Mr. Pellicano which alleged that OPM failed to timely respond to his complaint. (Doc. 16)  OPM has filed a response to this motion, (Doc. 22), which argues that service of the complaint was inadequate because it did not fully comply with Rule 4 of the Federal Rules of Civil Procedure in that the plaintiff did not properly serve the United States pursuant to Rule 4(i) by serving a copy of the complaint upon the United States Attorney.

Default judgments are governed by Rule 55 of the Federal Rules of Civil Procedure, and a default judgment may only be entered when the party against whom the default judgment is sought "has failed to plead or otherwise respond." Fed. R. Civ. P. 55(a).  It is well settled that a  "default judgment entered when there has been no proper service of the complaint is . . . void, and should be set aside." Gold Kist, Inc. v. Laurinburg Oil Co., Inc., 756 F.2d 14, 19 (3d Cir. 1985).  In this case, it appears that the plaintiff provided a copy of the complaint to OPM but did not perfect service by serving a copy upon the United States Attorney's Office.  Once service was made, OPM responded to this complaint in a complete fashion.  Therefore, IT IS RECOMMENDED that Mr. Pellicano's motion for default (Doc. 16), be DENIED.

### III.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the OPM's motion to dismiss (Docs. 32) be GRANTED, that Mr. Pellicano's motion for default (Doc. 16) be DENIED, and that the complaint be dismissed as to OPM.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 14th day of February 2012.

<u>*S/Martin C.  Carlson*</u>
Martin C. Carlson
United States Magistrate Judge
